[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 12-11735
_____

D.C. Docket No. 1:10-cv-00157-MP-GRJ


BRUCE RICH,

Plaintiff-Appellant,


versus


SECRETARY, FLORIDA DEPARTMENT OF CORRECTIONS,
FORMER WARDEN UNION CI,
FORMER ASSISTANT WARDEN OF PROGRAMS,
FOOD SERVICE DIRECTOR,
KATHLEEN FUHRMAN,
Registered Dietician, et al.,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Northern District of Florida
_____

(May 14, 2013)

Before MARTIN, HILL and BARKSDALE,[*] Circuit Judges.

MARTIN, Circuit Judge:

Bruce Rich is an Orthodox Jew serving time as a prisoner of the State of Florida. He filed a pro se complaint against the Secretary of the Florida Department of Corrections and other defendants[1] alleging violations of the Religious Land Use and Institutionalized Persons Act (RLUIPA), 42 U.S.C. § 2000cc (2006) et seq.[2] He claims the Defendants violate his right to practice his religion because they will not give him a strictly kosher diet. He seeks injunctive relief and money damages. The District Court granted summary judgment in favor of the Defendants. Mr. Rich, now counseled, asks us to vacate this judgment.

## I.    BACKGROUND AND PROCEDURAL HISTORY

At the time Mr. Rich filed suit, Florida had no program to provide kosher meals to inmates who asked for them for religious reasons. From the time Mr. Rich filed suit, until now, the Florida Department of Corrections offered three main diets: (1) the "[m]aster menu"; (2) the "[a]lternate entree," which offers a non-meat substitute; and (3) the "[v]egan meal pattern." Fla. Admin. Code r. 33-

---

[*] Honorable Rhesa H. Barksdale, United States Circuit Judge for the Fifth Circuit, sitting by designation.

[1] The other defendants are seven other prison officials: Milton Hicks, S.T. Robinson, Jeffery Andrews, Kathleen Fuhrman, Julie Deno, Alex Taylor, and Albert Thigpen. When we refer to the Defendants, we mean these people together with the Florida Department of Corrections.

[2] Mr. Rich also alleged a First Amendment violation under 42 U.S.C. § 1983, and an Eighth Amendment violation. He does not appeal the District Court's treatment of these claims.

204.002 (2012).  None of these diets are kosher.  Florida also provides

"[t]herapeutic diet[s]" that are prescribed to inmates with medical needs.  Id.  All

pork and pork products have been eliminated from meals in Florida prisons.

The record evidences that Florida has been able to provide kosher meals in

the past.  From April 2004 to August 2007, Florida prisons offered the Jewish

Dietary Accommodation Program (JDAP) that provided kosher meals to inmates

who met certain requirements.  As part of that program, the prison system

established seven separate kitchens at prisons around the state.  In 2007, a Study

Group on Religious Dietary Accommodation was formed to study offering kosher

meals to prisoners.  Despite this group's recommendation that Florida "[r]etain a

kosher dietary program," kosher meals were discontinued as of August 16, 2007.

Later, in 2010, an experimental kosher meal program was put in place at the

Florida prison known as the South Florida Reception Center.

Mr. Rich, a prisoner at Union Correctional Institution in Florida, sued the

Defendants in August 2010.  In response to Mr. Rich's suit, the Defendants filed a

motion for summary judgment, attaching three exhibits: (1) an affidavit by

Kathleen Fuhrman, Public Health Nutrition Program Manager (Fuhrman

Affidavit), addressing the cost of providing kosher meals; (2) an affidavit by James

Upchurch, Chief of the Bureau of Security Operations (Upchurch Affidavit),

addressing potential security concerns associated with providing kosher meals; and

3

(3) a copy of Florida's Food Service Standards for its prisons.  In response, Mr. Rich filed an "Answer to Defendants' Motion for Summary Judgment," which highlighted the fact that the Federal Bureau of Prisons provides kosher diets and that Florida had run a "pilot" kosher meal program in the South Florida Reception Center without incident.[3]  Mr. Rich attached three exhibits to this filing: (1) an unsworn affidavit in which he discussed his faith and the burden on his faith caused by not being provided with kosher meals; (2) a letter from the Aleph Institute stating that kosher meals had been served at the South Florida Reception Center South Unit for fifteen months without any security concerns; and (3) a Statement of Interest of the United States filed in a case in Indiana in which the United States asserted that the Indiana Department of Corrections violated RLUIPA by not providing kosher meals.

The Magistrate Judge ruled on the Defendants' motion in the first instance. First, the Magistrate Judge found no dispute about the fact that "the kosher diet [Mr. Rich] seeks is a sincerely held tenet of his religion."  The Magistrate Judge also found no dispute in the record about the fact that "failure to provide a kosher diet to him substantially burdens his religious practice."  These findings made, the

---

[3] Before he filed his motion in opposition to summary judgment, Mr. Rich filed a "Motion to Extend the Discovery Cut-Off Date."  The District Court treated this motion as a request for an extension of time to respond to the Defendants' Motion for Summary Judgment, and denied the motion.  Mr. Rich also appeals this order.  Our resolution of the other issues raised on appeal requires no ruling on this issue, so we express no opinion.  We leave all decisions about discovery to the discretion of the District Court on remand.

burden then shifted to the Defendants "to demonstrate a compelling state interest and that the decision not to provide [Mr. Rich] a kosher diet is the least restrictive means of serving that compelling interest." The Magistrate Judge ultimately determined that Mr. Rich had "failed to come forward with evidence to prove his RLUIPA kosher diet claim" and recommended that summary judgment be granted in favor of Florida. The District Court adopted the Magistrate Judge's recommendation. It is this ruling we consider in this appeal.

A number of things have happened since Mr. Rich filed his appeal in this Court. First, in August 2012, the U.S. Department of Justice filed suit against the Florida Department of Corrections targeting its failure to provide kosher meals to inmates who request them for religious purposes. Complaint, United States v. Sec., Fla. Dep't of Corr., No. 1:12-cv-22958 (S.D. Fla. Aug. 14, 2012). Second, Florida announced that it would develop plans for a kosher meal program. It told Mr. Rich about this in February 2013. Third, Mr. Rich filed a Motion for Summary Reversal based on Florida's change in policy. The Defendants argued against summary reversal, stating instead that Mr. Rich's case should be dismissed as moot. Fourth, in March 2013, Florida issued a Religious Diet Program to begin at Union Correctional Institution (where Mr. Rich is an inmate) on April 5, 2013 and statewide on September 1, 2013. Under this program, Florida will provide certified prepackaged processed foods to those whose religious dietary needs

cannot be satisfied by the alternate entrée or vegan meal options once they pass a rigorous sincerity test, which includes "eat[ing] from the alternate entrée or vegan meal pattern" for up to ninety days.

## II.    STANDARD OF REVIEW

We review a District Court's grant of summary judgment de novo, applying the same legal standard used by the District Court.  Whatley v. CNA Ins. Cos., 189 F.3d 1310, 1313 (11th Cir. 1999).  When ruling on summary judgment, we draw all inferences in the light most favorable to the non-moving party and summary judgment is only appropriate where "there is no genuine issue as to any material fact."  Id. (quotation marks omitted).

"When the moving party has the burden of proof at trial, that party must show affirmatively the absence of a genuine issue of material fact: it must support its motion with credible evidence that would entitle it to a directed verdict if not controverted at trial."  United States v. Four Parcels of Real Prop. in Greene & Tuscaloosa Cntys. in State of Ala., 941 F.2d 1428, 1438 (11th Cir. 1991) (en banc) (quotation marks and alterations omitted).

> In other words, the moving party must show that, on all the essential elements of its case on which it bears the burden of proof at trial, no reasonable jury could find for the nonmoving party.  If the moving party makes such an affirmative showing, it is entitled to summary judgment unless the nonmoving party, in response, comes forward with significant, probative evidence demonstrating the existence of a triable issue of fact.

Id. (citation, quotation marks, and alterations omitted).

The same de novo standard applies here, where Mr. Rich did not object to the Magistrate Judge's report on summary judgment and that report was adopted by the District Court. "The failure to object . . . simply limits the scope of appellate review of factual findings to a plain error review; no limitation of the review of legal conclusions results." Hardin v. Wainwright, 678 F.2d 589, 591 (5th Cir. Unit B 1982).[4] By definition, a summary judgment ruling involves no findings of fact. See In re Optical Tech., Inc., 246 F.3d 1332, 1335 (11th Cir. 2001).

### III.    MOOTNESS

We turn first to the Defendants' argument that this case is moot because Florida now has a plan to provide kosher meals to qualified inmates. While the plan was implemented at the facility where Mr. Rich is incarcerated on April 5, 2013, as of the time of oral argument Mr. Rich was not yet receiving kosher meals. Under the new plan, Mr. Rich will not receive a kosher meal until he completes an interview with a Chaplain, eats alternate entrée or vegan meals for ninety days, and is then re-interviewed by the Chaplain.[5]

---

[4] Decisions rendered by Unit B panels of the former Fifth Circuit are binding precedent on this Court. See Stein v. Reynolds Sec., Inc., 667 F.2d 33, 34 (11th Cir. 1982).

[5] At oral argument, Mr. Rich also suggested that his claim was not moot because the new kosher meal plan would still substantially burden his religious exercise in violation of RLUIPA to the extent that it would require him to eat non-kosher meals for ninety days in order to be eligible for

"[A] federal court has no authority to give opinions upon moot questions or abstract propositions, or to declare principles or rules of law which cannot affect the matter in issue in the case before it." Church of Scientology of Cal. v. United States, 506 U.S. 9, 12, 113 S. Ct. 447, 449 (1992) (quotation marks omitted). "[I]f, pending an appeal, events transpire that make it impossible for this court to provide meaningful relief, the matter is no longer justiciable." Beta Upsilon Chi Upsilon Chapter at the Univ. of Fla. v. Machen, 586 F.3d 908, 916 (11th Cir. 2009). The fact that we have heard oral argument does not affect our mootness analysis. Id.

We also know that under the doctrine of "voluntary cessation," a party choosing to end conduct alleged to be illegal does not necessarily deprive the tribunal of the power to hear and determine the case. Harrell v. The Fla. Bar, 608 F.3d 1241, 1265 (11th Cir. 2010) (quotation marks omitted). "Since the defendant is free to return to his old ways, he bears a heavy burden of demonstrating that his cessation of the challenged conduct renders the controversy moot." Id. (citation and quotation marks omitted). In considering this, we bear in mind that

---

kosher meals. Because we are reviewing only the summary judgment ruling here, we express no opinion on the validity of Florida's new kosher meal plan, including its ninety-day "sincerity test." At the same time we recognize that the fact that Florida formulated a new kosher meal plan may be relevant to the question of whether a policy of not providing kosher meals is the least restrictive alternative to further a compelling interest. 42 U.S.C. 2000cc-1(a); see Spratt v. R.I. Dep't of Corr., 482 F.3d 33, 40–41 (1st Cir. 2007) (finding that a "blanket ban on all inmate preaching" failed scrutiny in part because the prison had permitted preaching for several years); Warsoldier v. Woodford, 418 F.3d 989, 1001 (9th Cir. 2005) (finding that a ban on long hair for male inmates failed scrutiny in part because the prison system permitted long hair in "its own women's prisons").

8

government actors carry a lesser burden than others when they have unambiguously terminated the challenged policy.  See id. at 1266.[6]

Our consideration of voluntary cessation by government actors, calls for us to look at several factors.  "First, we consider whether the termination of the offending conduct was unambiguous."  Nat'l Ass'n of Bds. of Pharmacy v. Bd. of Regents of the Univ. Sys. of Ga., 633 F.3d 1297, 1310 (11th Cir. 2011) (quotation marks omitted).  "[T]he timing and content of the decision are . . . relevant in assessing whether the defendant's 'termination' of the challenged conduct is sufficiently 'unambiguous' to warrant application of the . . . presumption in favor of governmental entities."  Harrell, 608 F.3d at 1266.  "Second, we look to whether the change in government policy or conduct appears to be the result of substantial deliberation, or is simply an attempt to manipulate jurisdiction."  Nat'l Ass'n of Bds. of Pharmacy, 633 F.3d at 1310. "Third, we ask whether the government has 'consistently applied' a new policy or adhered to a new course of conduct."  Id.

Having considered these factors, we conclude that Florida has not unambiguously terminated its policy which has deprived Mr. Rich of kosher meals,

---

[6] At oral argument, Florida argued that 42 U.S.C. § 2000cc-3(e) allows it to avoid litigation by changing the challenged policy. In pertinent part, § 2000cc-3(e) provides that "[a] government may avoid the preemptive force of any provision of this chapter [RLUIPA] by changing the policy or practice that results in a substantial burden on religious exercise."  42 U.S.C. § 2000cc-3(e).  However, we have seen nothing that suggests this provision preempts the principle that "[v]oluntary cessation of challenged conduct moots a case . . . only if it is absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur."  Adarand Constructors, Inc. v. Slater, 528 U.S. 216, 222, 120 S. Ct. 722, 725 (2000) (quotation marks omitted).  Indeed, Florida has provided no authority to support its claim under this provision.

so his claim is not moot.  To begin, the timing of Florida's policy change creates ambiguity.  The policy change was not made before litigation was threatened, but was instead "late in the game."  Harrell, 608 F.3d at 1266–67 (quotation marks omitted); see Jager v. Douglas Cnty. Sch. Dist., 862 F.2d 824, 833–34 (11th Cir. 1989) (finding that a claim was not mooted by the school district's voluntary cessation of the challenged activity in part because the change was only made when there was an "imminent threat of [a] lawsuit").  Specifically, Florida announced that it was going to change its policy only after Mr. Rich filed his counseled brief to this Court and after the U.S. Department of Justice filed suit against it in the Southern District of Florida.  Notably, Florida implemented the plan at the prison where Mr. Rich is incarcerated, and only at that prison, less than two weeks before the oral argument scheduled in this Court.  These facts make it appear that the change in policy is "an attempt to manipulate jurisdiction."  Nat'l Ass'n of Bds. of Pharmacy, 633 F.3d at 1310.

Further, Florida "continue[s] to press on appeal that the voluntarily ceased conduct should be declared constitutional" and has "never promised not to resume the prior practice."  See Jager, 862 F.2d at 833–34; see also Harrell, 608 F.3d at 1267.  There is nothing to suggest that Florida will not simply end the new kosher meal program at some point in the future, just as it did in 2007.  On this record, we conclude that Mr. Rich's claims are not moot.

## IV.    MERITS OF MR. RICH'S RLUIPA CLAIM

RLUIPA prohibits policies that substantially burden religious exercise except where a policy "(1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest."  42 U.S.C. § 2000cc-1(a).  Once a plaintiff proves that a challenged practice substantially burdens his religious exercise, the burden shifts to the defendant to show that the policy is the least restrictive means of furthering a compelling government interest.  Id. § 2000cc-2(b); Smith v. Allen, 502 F.3d 1255, 1276 (11th Cir. 2007), abrogated on other grounds by Sossamon v. Texas, 131 S. Ct. 1651 (2011).

Florida does not dispute that its policy of not providing kosher meals substantially burdens Mr. Rich's sincere religious exercise.  That being the case, the burden shifts to the Defendants to show that Florida's policy of not providing kosher meals is in furtherance of a compelling governmental interest and is the least restrictive means of furthering that interest.

## A. IN FURTHERANCE OF A COMPELLING GOVERNMENTAL INTEREST

The Defendants argue that Florida's policy of not providing kosher meals furthers two compelling governmental interests: safety and cost management. While safety and cost can be compelling governmental interests, the Defendants

11

have not carried their burden to show that Florida's policy in fact furthered these two interests.

First, the evidence submitted by the Defendants on summary judgment in support of its position is insubstantial.  While we are mindful of our obligation to give "'due deference to the experience and expertise of prison and jail administrators,'" Cutter v. Wilkinson, 544 U.S. 709, 723, 125 S. Ct. 2113, 2123 (2005) (quoting S. Rep. No. 103-111, at 10 (1993), reprinted in 1993 U.S.C.C.A.N. 1892, 1900, 1911), "'policies grounded on mere speculation, exaggerated fears, or post-hoc rationalizations will not suffice to meet the act's requirements,'" Lawson v. Singletary, 85 F.3d 502, 509 (11th Cir. 1996) (quoting S. Rep. No. 103-111, at 10, reprinted in 1993 U.S.C.C.A.N. 1892, 1900) (discussing the Religious Freedom Restoration Act, predecessor to RLUIPA).  The cost estimates in the Fuhrman Affidavit were based on assumptions that were unsupported by the record.  For example, Ms. Fuhrman assumed that providing kosher meals to as many as 6,283 inmates would not at all reduce the amount of non-kosher food that would have to be purchased.  Also, Ms. Fuhrman assumed that every Muslim inmate would request a kosher meal in spite of the fact that Florida removed pork products from its prison meal plans in order to accommodate Muslims.  Many of the security concerns in the Upchurch Affidavit are also speculative.  For example, Mr. Upchurch testified that providing kosher meals may "lead to retaliation against the

12

kosher inmates" if other inmates believed that the higher cost of providing a kosher diet impacted the quality of the food they received.

Second, as Mr. Rich noted in his pro se motion filed in opposition to summary judgment, the copy of Florida's Food Services Standards for prisons raises more questions which the Defendants left unanswered. For example, how is Florida able to administer a therapeutic diet program without the same inmate morale and administrative cost problems they suggest would plague a kosher meal program? Cf. Couch v. Jabe, 679 F.3d 197, 204 (4th Cir. 2012) (determining that the affidavits relied on by prison officials to show that there was a compelling security interest were weak because they "fail[ed] to explain how the prison is able to deal with the beards of medically exempt inmates but could not similarly accommodate religious exemptions"); Covenant Christian Ministries, Inc. v. City of Marietta, Ga., 654 F.3d 1231, 1246 (11th Cir. 2011) (rejecting the city's compelling interest argument in the context of a RLUIPA land-use claim because the "proffered interests . . . [were] not pursued against analogous nonreligious conduct" (quotation marks omitted)).

Third, Mr. Rich's pro se motion filed in opposition to summary judgment raises other genuine questions of material fact about whether cost control and security are furthered by denying kosher meals to inmates. For example, the Aleph Institute letter said that the kosher meal pilot program at the South Florida

Reception Center has not caused any security problems and has not prompted overwhelming interest from inmates.  This raises more questions of fact about whether providing kosher meals would actually cause the security and cost concerns the Defendants alleged.  We also observe that the Study Group on Religious Dietary Accommodation's Report on the JDAP, and other agency reports referred to by Mr. Rich on appeal, support the determination that the Defendants have not met their burden on summary judgment.  See Terrebonne v. Blackburn, 646 F.2d 997, 1000 n.4 (5th Cir. 1981) ("Absent some reason for mistrust, courts have not hesitated to take judicial notice of agency records and reports.").[7]

## B.  LEAST RESTRICTIVE MEANS

Neither have the Defendants carried their burden of showing that Florida's policy of not providing kosher meals to prison inmates is the least restrictive means to further the cost and security interests they assert.

For example, in his motion in opposition to summary judgment, Mr. Rich pointed out that the "Federal Bureau of Prisons and a plurality of state correctional departments have instituted religious diet accommodations," and he attached the Federal Bureau of Prisons' kosher meal plan to his Complaint.  While the practices at other institutions are not controlling, they are relevant to an inquiry about

---

[7] In Bonner v. City of Prichard, Ala., 661 F.2d 1206 (11th Cir. 1981) (en banc), we adopted as binding all decisions of the former Fifth Circuit handed down before October 1, 1981.  Id. at 1209.

14

whether a particular restriction is the least restrictive means by which to further a shared interest.  See, e.g., Spratt v. R.I. Dep't of Corr., 482 F.3d 33, 42 (1st Cir. 2007) (finding the fact that other prisons, including the Federal Bureau of Prisons, did not have a specific policy banning inmates from preaching "problematic" for Rhode Island's argument that its policy doing so was the least restrictive means of furthering compelling interests (quotation marks omitted)); Warsoldier v. Woodford, 418 F.3d 989, 999–1000 (9th Cir. 2005) (same). This is especially true in light of the Defendants' meager efforts to explain why Florida's prisons are so different from the penal institutions that now provide kosher meals such that the plans adopted by those other institutions would not work in Florida.  See, e.g., Spratt, 482 F.3d at 42.  Finally, the fact that Florida administers a therapeutic meal program and a pilot kosher meal program suggests that there are less restrictive means by which Florida's Department of Corrections can further its interests.

Therefore, on the record available to the District Court, the Defendants failed to demonstrate an absence of a genuine dispute of material fact on either the furthering of a compelling interest or the least restrictive means requirements of the statute, and summary judgment was not appropriate.  See Four Parcels, 941 F.2d at 1438.

## V.    REMEDY

Mr. Rich also seeks a grant of summary judgment in his favor based on the recent developments in Florida, specifically Florida's new kosher meal plan. However, we will leave it to the District Court to determine, in the first instance, the impact of Florida's new kosher meal policy on Mr. Rich's RLUIPA claim in light of the present record and any other evidence developed on remand.

## VI.    CONCLUSION

Because the Defendants failed to satisfy their burden at summary judgment, we reverse the District Court's grant of summary judgment to them and remand for proceedings consistent with this opinion.

**REVERSED and REMANDED.**