Charles E. BLACK, Jr. and Kristi H. Black, his wife, Plaintiffs,

v.

**KERZNER INTERNATIONAL HOLDINGS LIMITED, a Bahamian company; Kerzner International Limited, a Bahamian company; Kerzner International Bahamas Limited, a Bahamian company; Island Hotel Company Limited, a Bahamian company; Paradise Island Limited, a Bahamian company; Defendants.**

Case No. 12–CV–60301.

United States District Court, S.D. Florida.

July 30, 2013.

Sean Michael Cleary, Sean M. Cleary Law Offices, Miami, FL, for Plaintiffs.

Jerry Dean Hamilton, Carlos Javier Chardon, Hamilton Miller & Birthisel LLP, Miami, FL, for Defendants.

### ORDER GRANTING MOTION FOR PARTIAL SUMMARY JUDGMENT

WILLIAM P. DIMITROULEAS, District Judge.

THIS CAUSE is before the Court upon the Kerzner Defendants' Motion for Judgment on the Pleadings or, in the Alternative, Motion for Partial Summary Judgment of Plaintiffs' Punitive Damages Count (the "Motion") [DE 122]. The Court has carefully considered the Motion [DE 122], Plaintiffs' Response in Opposition [DE 131], and Defendants' Reply [DE 143]. The Court is otherwise fully advised in the premises.

## I. STANDARD OF REVIEW

### A. Standard of Review for Judgment on the Pleadings Under Rule 12(c)

█ Rule 12(c) of the Federal Rules of Civil Procedure (the "Rules") allows a party to move for judgment on the pleadings. When the defendant is the movant, "[a] motion for judgment on the pleadings is governed by the same standard as a motion to dismiss for failure to state a claim on which relief may be granted." *Pinto v. Microsoft Corp.*, No. 12–60509–CIV, 2012 WL 4479059, at *2 (S.D.Fla. Sept. 28, 2012) (citing *Hawthorne v. Mac Adjustment, Inc.*, 140 F.3d 1367, 1370 (11th Cir. 1998)). Accordingly, the Court "accept[s] all facts in the complaint as true and view[s] them in the light most favorable to the plaintiffs." *Moore v. Liberty Nat. Life Ins. Co.*, 267 F.3d 1209, 1213 (11th Cir. 2001) (internal quotations omitted). "The complaint may not be dismissed unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Hawthorne*, 140 F.3d at 1370.

### B. Standard of Review for Summary Judgment Under Rule 56

Under Rule 56(a), "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). The movant bears "the stringent burden of establishing the absence of a genuine issue of material fact." *Sauve v. Lamberti*, 597 F.Supp.2d 1312, 1315 (S.D.Fla.2008) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)).

"A fact is material for the purposes of summary judgment only if it might affect the outcome of the suit under the govern-ing law." *Kerr v. McDonald's Corp.*, 427 F.3d 947, 951 (11th Cir.2005) (internal quotations omitted). Furthermore, "[a]n issue [of material fact] is not 'genuine' if it is unsupported by the evidence or is created by evidence that is 'merely colorable' or 'not significantly probative.'" *Flamingo S. Beach I Condo. Ass'n, Inc. v. Selective Ins. Co. of Southeast*, 492 Fed.Appx. 16, 26 (11th Cir.2012) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). "A mere scintilla of evidence in support of the nonmoving party's position is insufficient to defeat a motion for summary judgment; there must be evidence from which a jury could reasonably find for the non-moving party." *Id.* at 26–27 (citing *Anderson*, 477 U.S. at 252, 106 S.Ct. 2505). Accordingly, if the moving party shows "that, on all the essential elements of its case on which it bears the burden of proof at trial, no reasonable jury could find for the nonmoving party" then "it is entitled to summary judgment unless the nonmoving party, in response, comes forward with significant, probative evidence demonstrating the existence of a triable issue of fact." *Rich v. Secretary, Fla. Dept. of Corr.*, 716 F.3d 525, 530 (11th Cir.2013) (citation omitted).

## II. BACKGROUND

### A. Factual Background [1]

The parties to this action are plaintiffs Charles E. Black, Jr. ("Charles" or "Plaintiff") and Kristi H. Black (together with Charles, "Plaintiffs") and defendants Kerzner International Holdings Limited, Kerzner International Limited, Kerzner International Bahamas Limited, Island Hotel Company Limited, and Paradise Island Limited (collectively, "Defendants" or "Kerzner"). Defendants own and operate

---

1. Because the Court ultimately disposes of the Motion [DE 122] under Rule 56 and not Rule 12(c), these facts are based on the record as a whole rather than on the pleadings alone.

the Atlantis Hotel in the Bahamas. This action arises from an injury sustained by Charles while riding the Abyss waterslide at the Atlantis Hotel.

The parties have provided in their respective Statements of Material Facts various factual assertions that are supported by the record. In some instances, the parties have not contested their adversaries' assertions. In other instances, the parties have contested their adversaries' assertions but without citing sufficient materials in the record to refute those assertions. The Court will deem all of these uncontested—or insufficiently contested—factual assertions to be admitted. *See* S.D. Fla. L.R. 56.1(b); Fed.R.Civ.P. 56(c),(e). The Court will now set forth the relevant admitted facts.

The Abyss is 200–foot–long body slide located at the Atlantis Hotel. [DE 122 ¶ 1; DE 130 ¶ 1]. Guests enter at the top of the slide, where a lifeguard (the "Top Lifeguard") is stationed. *Id.* Guests exit the bottom of the slide into a splash pool. *Id.* A blue mat, sixteen (16) feet in length and seven (7) feet wide, is located at the bottom of the splash pool. [DE 122 ¶ 2; DE 130 ¶ 2]. The blue mat begins approximately four (4) feet after the slide exit and ends at twenty (20) feet after the slide exit. *Id.* A second lifeguard (the "Bottom Lifeguard") is stationed at the bottom of the slide in the vicinity of the splash pool. [DE 122 ¶¶ 2–3; DE 130 ¶¶ 2–3]. The Top Lifeguard cannot see guests exiting the slide and entering the splash pool. [DE 122 ¶ 3; DE 130 ¶ 3]. Accordingly, Defendants installed a mechanism through which the Bottom Lifeguard presses a dispatch button causing a light placed at the top of the slide—in view of the Top Lifeguard and the next guest—to turn from red to green. *Id.* After the light turns green, the Top Lifeguard sends the next guest down the slide, after which the light reverts from green back to red. *Id.* Defendants'

policy is that the Bottom Lifeguard can press the dispatch button—and signal to the Top Lifeguard to dispatch the next guest—only after the previous guest has stepped outside the blue mat. [DE 122 ¶ 4; DE 130 ¶ 4].

On October 29, 2011, Plaintiffs and their four children rode the Abyss. [DE 122 ¶ 9; DE 130 ¶ 9]. Before riding the slide, they each read and understood a warning sign exhibited next to the slide. *Id.* The subject incident occurred after the first four family members had ridden the slide without collision. [DE 122 ¶ 11; DE 130 ¶ 11].

Chaz Black ("Chaz"), the fifth family member to ride the slide, landed in the splash pool without injury. *Id.* After Chaz had landed in the water, the Bottom Lifeguard, Delroy Stewart ("Stewart"), pressed the dispatch button turning the light from red to green. [DE 122 ¶ 13]. Charles, the next guest in line to ride the Abyss, did not enter the slide immediately after the light turned green. [DE 122 ¶ 12; DE 130 ¶ 12]. When the light turned green, the Top Lifeguard was engaged in a discussion with one of her coworkers a few feet away and did not immediately instruct Charles to enter the slide. [DE 122 ¶¶ 12, 14; DE 130 ¶¶ 12, 14]. Charles Black waited somewhere between "a few seconds" to fifteen (15) seconds after the light had turned green—and a total of between twenty-five (25) to over sixty (60) seconds after Chaz had entered the slide—and then entered the slide without an instruction by the Top Lifeguard to do so. [DE 122 ¶¶ 14–15; DE 130 ¶¶ 14–15].

In the meantime, Chaz had exited the bottom of the slide into the splash pool, and Stewart, the Bottom Lifeguard, had pushed the dispatch button turning the light at the top of the slide to green. [DE 122 ¶ 17]. As Chaz was standing in the splash pool, Lucas Black, who was waiting

at the edge of the splash pool, noticed Chaz's baseball cap coming down the slide and yelled to Chaz, "your hat." [DE 122 ¶ 16; DE 130 ¶ 16]. Chaz then turned around and walked toward the slide to retrieve the hat. [DE 122 ¶¶ 18–19; DE 130 ¶¶ 18–19]. At that point, Charles exited the slide and injured his ankle by colliding into Chaz's lower back. [DE 122 ¶ 20; DE 130 ¶ 20].

Kerzner's lifeguards are all trained by the American Red Cross. [DE 122 ¶ 24; DE 130 ¶ 30]. The lifeguards are also trained with the American Red Cross Lifeguard training materials, the Atlantis Marine and Water Park Standard Operating Procedures, and information derived from the Waterslides Operations & Maintenance Manual written by the waterslide manufacturer Whitewater West Industries, Ltd. [DE 122 ¶ 25]. Additionally, the lifeguards must pass a written test, swim test, ongoing monthly audits, and regular performance appraisals. [DE 122 ¶ 26]. The lifeguards are trained and required to be in a position to see any emergency within ten (10) seconds and respond within twenty (20) seconds. [DE 122 ¶ 29; DE 130 ¶ 29]. Kerzner has a policy prohibiting lifeguards from entering the water to move individuals that are able to leave the area on their own. [DE 143 ¶¶ 36–37; DE 130 ¶¶ 36–37]. Therefore, lifeguards should not jump into the water to prevent potential collisions at the Abyss. *Id.* In those circumstances, the lifeguards should blow their whistles and/or utilize verbal warnings. *See* [DE 130 ¶ 36; DE 143 ¶ 36].

Stewart, the Bottom Lifeguard during the incident, had previously been suspended for leaving his post at a separate waterslide in order to retrieve a first aid kid to assist a guest. [DE 130 ¶ 43; DE 143 ¶ 43]. Furthermore, Kerzner was aware that, at times, Stewart had failed to provide warnings to guests to exit the splash pool quickly. [DE 130 ¶ 45; DE 143 ¶ 45].

Kerzner performs daily inspections of the Abyss prior to operating the slide. [DE 122 ¶ 30]. As of the date of the incident, *approximately* one million (1,000,000) guests had ridden the Abyss. [DE 122 ¶ 6; DE 130 ¶ 6; DE 143 ¶ 6]. Kerzner is not aware of any other incident where a guest walked fully back into the Abyss splash pool's blue mat area after having left that area of the splash pool. [DE 122 ¶ 32; DE 130 ¶ 32]. Finally, there have been no other incidents involving a collision inside the Abyss splash pool. [DE 122 ¶ 7; DE 130 ¶ 7; DE 143 ¶ 7].

**B. *Procedural Posture***

Based on Charles's collision with Chaz in the Abyss splash pool, Plaintiffs filed the instant action against Defendants, asserting causes of action for negligence, punitive damages, and loss of consortium. Through the Motion [DE 122], Defendants now seek, as to the punitive damages count only, judgment on the pleadings under Rule 12(c) or, in the alternative, summary judgment under Rule 56.

### III. *DISCUSSION*

For the following reasons, the Court finds that summary judgment as to the punitive damages claim is warranted. Accordingly, the Court need not consider judgment on the pleadings under Rule 12(c).[2] *See* Fed.R.Civ.P. 12(d).

2. Notwithstanding the potential merits of Defendants' argument for judgment on the pleadings, the Court would be hesitant to grant this relief at this late stage of the litigation. Motions under Rule 12(c) must be filed "early enough not to delay trial." Fed. R.Civ.P. 12(d). Here, Defendants filed the Motion [DE 122] less than three months before the start of the trial period, and the Motion [DE 122] became ripe for review less than two months before the trial period. If the Complaint [DE 1] were dismissed under Rule 12(c), the Court would be inclined to grant leave to amend. *See Pinto v. Microsoft*

"Under Florida law, '[a] defendant may be held liable for punitive damages only if the trier of fact, based on clear and convincing evidence, finds that the defendant was personally guilty of intentional misconduct or gross negligence.' " [3] *Mee Indus. v. Dow Chem. Co.*, 608 F.3d 1202, 1220 (11th Cir.2010) (quoting Fla. Stat. § 768.72(2)). "In order to demonstrate intentional misconduct, the plaintiff must show 'the defendant had actual knowledge of the wrongfulness of the conduct and the high probability that injury or damage to the claimant would result and, despite that knowledge, intentionally pursued that course of conduct, resulting in injury or damage.' " *Id.* (quoting Fla. Stat. § 768.72(2)(a)). Gross negligence requires a showing that " 'the defendant's conduct was so reckless or wanting in care that it constituted a conscious disregard or indifference to the life, safety, or rights of persons exposed to such conduct.' " *Id.* at 1220–21 (quoting Fla. Stat. § 768.72(2)(b)).

Where a corporation is involved, punitive damages may be imposed based on the actions of an employee of the corporation only if that employee was guilty of intentional misconduct or gross negligence *and* one of the following is true: (a) the corporation actively and knowingly participated in such conduct; (b) the officers, directors, or managers of the corporation knowingly condoned, ratified, or consented to such conduct; or (c) the corporation engaged in conduct that constituted gross negligence. *Tiller v. Ford Motor Co.*, No. 3:03–CV–489–J–32HTS, 2006 WL 166530, at \*2–3 (M.D.Fla. Jan. 21, 2006) (citing Fla. Stat. § 768.72(3)); *see also Koutsouradis v. Delta Air Lines, Inc.*, 427 F.3d 1339, 1344 (11th Cir.2005) ("Section 768.72(3) provides that punitive damages may be imposed upon an employer for the conduct of its employee or agent only [i]f the employer actively and knowingly participates, condones, ratifies or consents to such conduct."). Ultimately, "[p]unitive damage awards are limited to cases involving 'truly culpable behavior.' " *Kurtz v. Young*, No. 08–80355–CIV, 2009 WL 1490578, at \*6 (S.D.Fla. May 26, 2009) (quoting *Weinstein Design Group, Inc. v. Fielder*, 884 So.2d 990, 1001 (Fla. 4th DCA 2004)).

Defendants assert that there is no record evidence, let alone clear and convincing evidence, that Stewart's conduct as the Bottom Lifeguard constituted intentional misconduct or gross negligence. Defendants additionally assert that, even if Stewart did engage in intentional misconduct or gross negligence, there is no record evidence that Kerzner participated in, condoned, consented to, or ratified that conduct or otherwise engaged in gross negligence. In support, Defendants rely on various holdings reflecting a high standard for establishing gross negligence.[4]

---

*Corp.*, No. 12–60509–CIV, 2012 WL 4479059, at \*3 (S.D.Fla. Sept. 28, 2012) (noting that plaintiffs should be given at least one opportunity to amend, even where the complaint is dismissed under Rule 12(c)). However, such leave would likely delay trial.

**3.** When sitting in diversity jurisdiction, the Court applies the substantive law of the forum state, which, in this case, is Florida law. *See, e.g., Horowitch v. Diamond Aircraft Indus., Inc.*, 645 F.3d 1254, 1257 (11th Cir.2011).

**4.** *See, e.g., Greathouse v. Ceco Concrete Const., L.L.C.*, No. 5:06cv2–RS–AK, 2007 WL 624550, at \*9 (N.D.Fla. Feb. 23, 2007) (noting that

"[i]n case after case, even in those involving deaths and serious injuries, courts have not hesitated to grant summary judgment and directed verdicts in favor of defendants on the issue of gross negligence"); *Weller v. Reitz*, 419 So.2d 739, 740–41 (Fla. 5th DCA 1982) (holding that plaintiff's co-employee was not grossly negligent in starting truck and pinning plaintiff to wall, where co-employee stuck his hand through window to start truck without first getting in, checking the gear, or checking the brake); *Hoyt v. Corbett*, 559 So.2d 98, 100–101 (Fla.App. 4th DCA 1990) (holding that employer was not grossly negligent where employee was electrocuted after super-

Plaintiffs, without relying on any precedent, argue that the record supports a finding that Defendants participated in, condoned, ratified, or consented to Stewart's purported intentional misconduct or gross negligence or otherwise directly engaged in gross negligence. In support, Plaintiffs focus primarily on the following conduct:

- Defendants chose for the Bottom Lifeguard to sit in an elevated chair thirty-eight (38) feet from the bottom of the Abyss, where he could not immediately reach guests in danger;

- Defendants have a policy that their employees cannot enter the splash pool to prevent collisions at the bottom of the Abyss;

- Defendants have a policy that their employees cannot grab a guest to prevent an injury;

- Defendants have a policy that the dispatch button can be pressed, and the next guest allowed into the Abyss slide, when the previous guest has exited the blue mat area rather than the splash pool; and

- Defendants allowed Stewart to act as the Bottom Lifeguard at the Abyss despite his previous infractions on the job.

The Court finds that there is no genuine dispute as to material fact regarding Defendants' liability for punitive damages. Even if the above assertions were proven at trial, there would not be clear and convincing evidence for a reasonable jury to conclude that Defendants participated in, condoned, ratified, or consented to Stewart's purported intentional misconduct or gross negligence.[5] At best, Plaintiffs could prove that Stewart pushed the dispatch button before Chaz cleared the blue mat and/or that Stewart failed to warn Chaz to stay clear of the blue mat once the dispatch button had been pushed.[6] Either way, there is no indication that Kerzner participated in, condoned, consented to, or ratified that conduct by Stewart. Indeed, Kerzner's policy is for the Bottom Lifeguard at the Abyss to press the dispatch button only after a guest has cleared the blue mat area. It is also Kerzner's policy for the Bottom Lifeguard to verbally warn any guest who attempts to reenter the blue mat area once the dispatch button has been pressed. Kerzner certainly did not condone Stewart's departure from those policies as Charles was riding the Abyss.

Moreover, Kerzner did not directly engage in gross negligence by implementing those policies or by employing Stewart to act as the Bottom Lifeguard. Kerzner made a determination that the Bottom Lifeguard could push the dispatch button and dispatch the next guest as soon as the previous guest had exited the blue mat area of the splash pool. Even if an alter-

---

visor violated company policy by leaving a defective electrical cord in an on-site truck rather than taking the cord to the appropriate office for repairs).

5. In so holding, the Court does not take a position as to whether the facts, as presented by Plaintiffs, prove that Stewart engaged in intentional misconduct or gross negligence. Rather, the Court holds that Kerzner is not liable under § 768.72(3) even if those facts do constitute intentional misconduct or gross negligence.

6. These facts are in dispute. Specifically, there is a dispute as to whether Chaz stepped away from the blue mat area of the splash pool before returning to retrieve his hat or simply retrieved his hat while remaining in the same area of the splash pool where he had landed. See [DE 122 ¶ 17]. There is also a dispute as to whether the bottom lifeguard blew his whistle and/or verbally warned Chaz to refrain from returning to the blue mat area. See [DE 122 ¶¶ 18–19; DE 130 ¶¶ 18–19].

native system may have been safer—for example, if the Bottom Lifeguard could not press the dispatch button until the previous guest had exited the splash pool completely—there is not clear and convincing evidence that Kerzner consciously disregarded or was indifferent to its guests' safety. Indeed, Kerzner had implemented and utilized its system without any incident in the Abyss splash pool for approximately one million (1,000,000) riders.

Similarly, Kerzner was not grossly negligent by implementing its policy that the Bottom Lifeguard should use verbal warnings to prevent collisions in the splash pool. There is no evidence that it would be safer if the Bottom Lifeguard could jump into the Abyss splash pool when guests failed to clear the blue mat. For example, if Stewart had jumped into the splash pool in an attempt to move Chaz, Charles may have collided into both Stewart and Chaz. Accordingly, there is not clear and convincing evidence for a reasonable jury to conclude that Kerzner consciously disregarded or was indifferent to guest safety by requiring the Bottom Lifeguard to verbally warn, rather than physically aid, guests who failed to clear the blue mat.

Finally, there is not clear and convincing evidence that Kerzner consciously disregarded or was indifferent to guests' safety by placing Stewart as the Bottom Lifeguard despite Stewart's previous infractions. Stewart's only relevant infraction [7] was his failure, at times, to instruct guests to quickly exit the Abyss splash pool. However, that conduct, alone, would not pose any threat to guests as long as Stewart adhered to the policy of waiting to press the dispatch button until each guest cleared the blue mat area. There is no evidence that Stewart had previously pushed the dispatch button—and signaled

that the next guest could enter the slide—before the preceding guest had exited the blue mat area into the safe zone.

In sum, Kerzner's policies do not constitute gross negligence. And even if Plaintiffs could prove that Stewart deviated from those policies—and, in doing so, engaged in intentional misconduct or gross negligence—there is no evidence that Kerzner participated in, condoned, ratified, or consented to Stewart's deviations. Accordingly, with respect to the punitive damages claim, there is no genuine dispute as to material fact, and Defendants are entitled to judgment as a matter of law.

### IV. *CONCLUSION*

For the foregoing reasons, it is **OR-DERED AND ADJUDGED** as follows:

1. The Motion [DE 122] is hereby **GRANTED** with respect to partial summary judgment;

2. Judgment is hereby entered in favor of Defendants and against Plaintiffs as to Plaintiffs' claim for punitive damages (Count II); and

3. The Court will enter final judgment at the conclusion of the case.

---

7. It is unclear why Stewart's previous suspension for leaving his post to obtain a first aid kit would pose a danger to guests in the Abyss splash pool.