[DO NOT PUBLISH]

In the

# United States Court of Appeals

For the Eleventh Circuit

_____

No. 23-12289

Non-Argument Calendar

_____

JAMES ELTON ROBERTS,

Plaintiff-Appellant,

*versus*

SECRETARY, DEPARTMENT OF CORRECTIONS,
M. MILLER,
Chaplain,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Middle District of Florida

D.C. Docket No. 3:22-cv-00575-MMH-JBT

_____

Before NEWSOM, BRANCH, and ANDERSON, Circuit Judges.

PER CURIAM:

James Roberts sued the Florida Department of Corrections ("FDC") and Chaplain Marcus Miller (collectively, the "FDC defendants"), alleging that they improperly removed him from the Religious Diet Program ("RDP") in violation of his First Amendment rights and the Religious Land Use and Institutionalized Persons Act ("RLUIPA"). The district court dismissed Roberts's amended complaint as moot because the FDC defendants had placed him back in the RDP after he sued. On appeal, Roberts argues that his claim was not mooted because of his pending request for costs.

After careful review, we conclude that the district court erred in dismissing Roberts's case as moot because an exception to the mootness doctrine, which arises when a defendant voluntarily ceases its allegedly illegal conduct, applies to Roberts's case. Accordingly, we vacate and remand the district court's decision.

## I.    Background[1]

At one point while in the custody of the FDC, Roberts participated in the RDP and received kosher meals consistent with his Jewish faith.  On July 15, 2021, Roberts received a notice of violation "for no reason."  He promptly responded to the notice on July 23, 2021, but received another violation form stating that he never responded to the initial notice, was withdrawn from the program, and could reapply on January 23, 2022.

Roberts reapplied on January 23, 2022.  He sent a request two days later asking about his status and received a response stating, "approval in process[,] allow 10 days."  Roberts then received a letter on February 2, 2022, explaining that he was denied participation in the RDP on January 27, 2022, because he did not properly describe the kosher diet, despite using the same description from his previously approved application.  Roberts appealed the denial to the Secretary of the FDC and his appeal was denied.

Roberts, proceeding *pro se*, sued the FDC defendants on May 25, 2022.  On July 11, 2022, he filed his amended complaint alleging violations of the First Amendment, pursuant to 42 U.S.C. § 1983, and RLUIPA, 42 U.S.C. § 2000cc-1, by the FDC defendants.  He alleged that the FDC defendants improperly denied him participation in the RDP for kosher meals.  He said that, after

---

[1] We draw the following facts from the allegations in Roberts's complaint, "which on a motion to dismiss are accepted as true." *Doe v. Wooten*, 747 F.3d 1317, 1320 (11th Cir. 2014).

reporting multiple times via formal and informal grievances that "[his] food was being withheld and tampered with," Roberts had been on hunger strikes, reported "psychological emergencies," and attempted suicide, which were all "covered up," presumably by FDC employees. He also alleged that his property and paperwork had been stolen, destroyed, or "lost" in an attempt (again, presumably by FDC employees) to hinder his efforts "in these proceedings." For relief, he requested to be placed in the RDP and that "all court costs be paid by the defendants including filing fees and whatever other costs that result from [the] case."

On July 27, 2022, after filing suit, Roberts submitted another request to participate in the RDP. Miller forwarded the request to his supervisor, writing, "I would really like your 'take' on this particular application. This is the inmate who is pursuing a lawsuit against me." Less than thirty minutes later, his supervisor responded, "Go ahead and approve it." Miller then placed Roberts in the RDP on July 29, 2022. Roberts formally started participating in the RDP again on August 8, 2022.

In a signed declaration,[2] Miller explained that he asked his supervisor for guidance as "an independent decisionmaker" and

---

[2] While Miller's declaration is unsworn, it carries the same force as an affidavit under 28 U.S.C. § 1746 because he signed and dated the document, and "declare[d] under penalties of perjury that" the facts within "are true and correct." *See Furcron v. Mail Ctrs. Plus, LLC*, 843 F.3d 1295, 1303 n.2 (11th Cir. 2016) (clarifying that "[a]n affidavit is made under oath," while "a declaration is not sworn, but is subject to the penalty of perjury" and that, under § 1746, "declarations are afforded the same legal weight as affidavits, and are treated

that the lawsuit against him did not influence his decision to include Roberts in the RDP. Miller stated that "there is no intention to remove [Roberts] from the [RDP]," and that Roberts would only be removed from the program if he violated the rules.

Then, on September 14, 2022, the FDC defendants moved to dismiss Roberts's amended complaint. They argued that Roberts's suit had been moot "since August 8, 2022, when he was afforded the relief he requested in his Amended Complaint due to his being placed in the RDP." They added that during a phone call with opposing counsel on August 15, 2022, Roberts admitted that he was in the RDP. The FDC defendants asked the district court to dismiss the case with prejudice.

Roberts responded by arguing that the action was not moot.[3] He attached to his response various grievances and

---

accordingly" (alteration in original) (quotations omitted)); *Roy v. Ivy*, 53 F.4th 1338, 1348 (11th Cir. 2022) ("[U]nder § 1746, a declaration executed within the United States will substitute for a sworn affidavit if the declarant dates and subscribes the document as true under penalty of perjury in substantially the following form: 'I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct. Executed on (date). (Signature).'" (quoting 28 U.S.C. § 1746(2)).

[3] Although Roberts argued this point in a motion to show cause, rather than a response to the FDC defendants' motion to dismiss, we still take note of his argument. *See Tannenbaum v. United States*, 148 F.3d 1262, 1263 (11th Cir. 1998) ("*Pro se* pleadings are held to a less stringent standard than pleadings drafted by attorneys[.]").

responses from 2020 to 2022 showing that his attempts to be placed in the RDP had been repeatedly rejected.

The district court determined that Roberts's case was moot because he had been placed in the RDP. It explained that although a "narrow" exception to the mootness doctrine applies to injuries that are capable of repetition yet evade review, that exception did not apply to Roberts's case (citing *Al Najjar v. Ashcroft*, 273 F.3d 1330, 1336 (11th Cir. 2001)). The court therefore concluded that Roberts "failed to satisfy his burden of demonstrating that jurisdiction exists" and dismissed his amended complaint without prejudice.[4]

This appeal followed.

## II.    Standard of Review

"A [d]istrict [c]ourt's decision on mootness is a question of law we review *de novo*." *Wooten*, 747 F.3d at 1321–22 (italics added). "[B]ecause the question of mootness is jurisdictional in nature," we may apply exceptions to the mootness doctrine *sua sponte*, "regardless of whether the district court considered it or if the

---

[4] The district court also found that Roberts's request for punitive damages, fees, and court costs did not save his case from mootness. It said that, even if Roberts had properly requested such relief in the amended complaint, he was "not a prevailing party who may recover court costs" because no "judicial imprimatur on the change in the legal relationship between the parties" occurred (quoting *Smalbein v. City of Daytona Beach*, 353 F.3d 901, 904–05 (11th Cir. 2003)). Although the FDC defendants make this argument on appeal, we need not evaluate it because we conclude that Roberts's case is not moot under the voluntary-cessation exception.

parties briefed the issue." *Nat'l Advert. Co. v. City of Miami*, 402 F.3d 1329, 1331–32 (11th Cir. 2005).

## III.    Discussion

On appeal, Roberts challenges the dismissal of his suit as moot. After careful review, we conclude that the district court erred in dismissing Roberts's case as moot because it falls within the voluntary-cessation exception to the mootness doctrine.

Article III of the Constitution limits federal courts to deciding "Cases" and "Controversies." U.S. Const. art. III § 2. When an appeal does not present a case or controversy as to which we can give meaningful relief, the appeal is moot and should be dismissed. *De La Teja v. United States*, 321 F.3d 1357, 1362 (11th Cir. 2003). A case becomes moot "when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *Fla. Ass'n of Rehab. Facilities, Inc. v. State of Fla. Dep't of Health & Rehab. Servs.*, 225 F.3d 1208, 1216 (11th Cir. 2000) (quotations omitted). A motion to dismiss based on mootness can challenge jurisdiction in fact, irrespective of the pleadings, and a district court can consider evidence outside the pleadings to determine whether it has jurisdiction. *Lawrence v. Dunbar*, 919 F.2d 1525, 1529 (11th Cir. 1990).

The district court considered the capable-of-repetition-yet-evading-review exception to the mootness doctrine when it found

that Roberts's claims were moot.[5] But we conclude that a different exception to the mootness doctrine—the voluntary-cessation doctrine—applies to Roberts's case.

The voluntary-cessation exception may apply when a defendant voluntarily ceases its allegedly illegal conduct. *Doe*, 747 F.3d at 1322 ("[W]hen a defendant chooses to end a challenged practice, this choice does not always deprive a federal court of its power to decide the legality of the practice."). "A defendant claiming that its voluntary compliance moots a case bears the formidable burden of showing that it is absolutely clear the allegedly wrongful behavior could not reasonably be expected to recur." *Id.* (brackets omitted) (quoting *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 189 (2000)); *Rich v. Sec'y, Fla. Dep't of Corr.*, 716 F.3d 525, 531 (11th Cir. 2013) ("Since the defendant is free to return to his old ways, he bears a heavy

---

[5] The Supreme Court and our Court have recognized a narrow exception to the mootness doctrine where the original injury is "capable of repetition, yet evading review." *Kingdomware Techs., Inc. v. United States*, 579 U.S. 162, 170 (2016) (quotations omitted); *Al Najjar*, 273 F.3d at 1336 (explaining the exception is a narrow one). To satisfy this standard, a plaintiff must demonstrate (1) "a reasonable expectation or a demonstrated probability that the *same* controversy will recur involving the same complaining party," and (2) that "the challenged action [was] in its duration too short to be fully litigated prior to its cessation or expiration." *Al Najjar*, 273 F.3d at 1336 (emphasis in original) (quotations omitted).

Because we conclude that Roberts's case is not moot under the voluntary-cessation exception to mootness, we need not also address whether the capable-of-repetition-yet-evading-review exception applies.

burden of demonstrating that his cessation of the challenged conduct renders the controversy moot." (quotations omitted)).

The voluntary-cessation exception applies to cases involving government actors. *Doe*, 747 F.3d at 1322. "Because of the unique characteristics of public defendants, this Court often gives government actors more leeway than private parties in the presumption that they are unlikely to resume illegal activities," which we have called a "rebuttable presumption" or a "lesser burden." *Id.* (quotations omitted). Under this presumption, the controversy "will be moot in the absence of some reasonable basis to believe that the policy will be reinstated if the suit is terminated." *Id.* (quotations omitted). That said, "[a] government actor is entitled to this presumption only *after* it has shown unambiguous termination of the complained of activity." *Id.*

We have considered various factors when conducting both "the initial inquiry" of whether a government actor has shown unambiguous termination as well as "the following evaluation about whether there is a reasonable basis the challenged conduct will recur." *Id.* at 1322–23. While not an exhaustive list, we have considered the following: (1) "whether the termination of the offending conduct was unambiguous," (2) "whether the change in government policy or conduct appears to be the result of substantial deliberation, or is simply an attempt to manipulate jurisdiction," and (3) "whether the government has consistently applied a new policy or adhered to a new course of conduct[.]" *Id.* at 1323 (quotations omitted). "The timing and content of the

cessation decision are also relevant in evaluating whether the defendant's stopping of the challenged conduct is sufficiently unambiguous." *Id.* And we are "more likely to find a reasonable expectation of recurrence when the challenged behavior constituted a continuing practice or was otherwise deliberate." *Id.*

We first take the "crucial first step" of asking whether the FDC defendants, as government actors, unambiguously terminated the challenged action. *See id.* If the FDC defendants unambiguously terminated the challenged action, then there is a "rebuttable presumption" that "they are unlikely to resume illegal activities." *Id.* at 1322. If they have not unambiguously terminated the action, then they do not enjoy the "leeway" that "this Court often gives government actors." *Id.* (quotations omitted). Rather, the FDC defendants would "bear[] the formidable burden of showing that it is absolutely clear the allegedly wrongful behavior could not reasonably be expected to recur." *Id.* (quotations omitted).

We first conclude that the FDC defendants did not shoulder their burden of showing unambiguous termination. We reach this conclusion by analyzing the three factors considered in a voluntary-cessation inquiry. Applying the first factor, the FDC defendants did not show that they unambiguously terminated its pattern of excluding Roberts from the program. Although they formally included him on August 8, 2022, a one-time approval of Roberts's application, particularly given the persistent rejections from 2020 to 2022, is not a permanent guarantee that Roberts will

not be wrongfully removed again from the RDP. *See id.* at 1324 (explaining that plaintiff's request for injunctive relief was not moot because, despite receiving the requested injunctive relief, there was no showing of unambiguous termination of the pattern of allegedly wrongful conduct).

Addressing the second factor in our initial inquiry of whether the FDC defendants have shown unambiguous termination, we conclude that the timing and content of the FDC defendants' decision to place Roberts in the RDP "appears to be . . . an attempt to manipulate jurisdiction[.]" *Id.* at 1323 (quotations omitted). The FDC defendants, after a years-long pattern of refusing Roberts's requests to participate in the RDP, changed position only after Roberts sued. After Miller forwarded Roberts's July 27, 2022, request to join the RDP to his supervisor, explaining that the application came from "the inmate who is pursuing a lawsuit," the supervisor told Miller to "[g]o ahead and approve" the request less than thirty minutes later. Neither Miller nor his supervisor specified how Roberts's future requests would be evaluated or why they approved his participation in the program after so many years of refusing Roberts kosher meals. *See id.* at 1325 (concluding that the timing and substance of the BOP's decision did not "indicate an unambiguous termination" because, after years of misconduct, it "suddenly changed its position days before [] trial" and without any indication of how it "intends to hold steady" in its new course). The FDC defendants' actions thus do not appear to be "the result of substantial deliberation," *id.* at 1322–23 (quotations omitted), nor do they appear to be "well-

reasoned and therefore likely to endure." *Id.* at 1325 (quotations omitted). Instead, they appear to be a short-term attempt to avoid the court's jurisdiction.

As for the third factor, there is no evidence at all that the FDC defendants "ha[ve] consistently applied a new policy or adhered to a new course of conduct," leading us to the conclusion that the FDC defendants have not unambiguously terminated the challenged action. *Id.* at 1323. And, as noted, there is no evidence of why Roberts was removed from the RDP in the first place.

Considering the circumstances of Roberts's case, we thus conclude that the FDC defendants failed to carry their burden of demonstrating that they unambiguously stopped their pattern of excluding Roberts from the RDP. As a result, the FDC defendants "bear[] the formidable burden of showing that it is absolutely clear the allegedly wrongful behavior could not reasonably be expected to recur." *Id.* (quotations omitted).

We conclude that the FDC defendants failed to meet this "formidable burden." *Id.* at 1322 (quotations omitted). Miller merely stated in his declaration that "there is no intention to remove [Roberts] from the [RDP]," and that Roberts would only be removed from the program if he violated the rules of the RDP. But we have said that a non-permanent decision that "could change for any number of unrelated reasons," *including* the plaintiff's own behavior, does not alone show that "the allegedly wrongful behavior could not reasonably be expected to recur." *See id.* at

1323–24.[6]  "To the contrary, the fact that [Roberts] has been [rejected] repeatedly over a period of years supports a finding of likely recurrence."  *Id.* at 1324.

Our conclusion is fortified by *Rich v. Secretary, Florida Department of Corrections*, 716 F.3d 525 (11th Cir. 2013).  *Rich* also involved a Florida prisoner who filed a *pro se* complaint alleging that the FDC violated his rights by denying him "a strictly kosher diet."  716 F.3d at 528.  We concluded that the prisoner's claims were not moot even though Florida implemented "a plan to provide kosher meals to qualified inmates."  *Id.* at 530–32. Evaluating the timing of the policy change in question, we found ambiguity where the change "was not made before litigation was threatened, but was instead late in the game."  *Id.* at 532 (quotations omitted).  We explained that "Florida announced that it was going to change its policy only after [the prisoner] filed his counseled brief to this Court and after the U.S. Department of Justice filed suit against it," which "ma[d]e it appear that the change in policy [was] an attempt to manipulate jurisdiction."  *Id.* (quotations omitted). Further, we said that "[t]here [was] nothing to suggest that Florida

---

[6] Indeed, Roberts's opening brief on appeal says that the allegedly wrongful conduct *did* recur because the FDC defendants "suspended [him] again for no reason" after the district court dismissed his case.  Of course, if Roberts's assertion is true, then we may easily conclude his case is not moot because "we look at the events at the present time, not at the time the complaint was filed or when the federal order on review was issued."  *Dow Jones & Co. v. Kaye*, 256 F.3d 1251, 1254 (11th Cir. 2001).  But we need not investigate the matter because, as explained in this opinion, this case is not moot due to the voluntary-cessation doctrine.

[would] not simply end the new kosher meal program at some point in the future," as it had years earlier. *Id.* We therefore concluded that FDC had not unambiguously terminated its policy that had deprived the prisoner of his meals, and the prisoner's claims were not moot. *Id.* at 532. The same analysis holds here.

In sum, the district court erred by failing to analyze mootness under the voluntary-cessation doctrine. In doing so, it improperly placed the burden on Roberts to show jurisdiction existed, when that burden falls on the shoulders of the FDC defendants. *See Doe*, 747 F.3d at 1323 (stating that "[t]he District Court skipped [the] crucial first step by failing to require the government to shoulder its initial burden" of showing unambiguous termination and "therefore improperly shifting the burden to [the plaintiff]"). Because the FDC defendants failed to show both that they have unambiguously terminated the complained of activity and that the complained of activity could not reasonably be expected to recur, Roberts's case is not moot. *See id.* at 1322.

## IV.    Conclusion

Because the district court erred in dismissing Roberts's case as moot, we vacate and remand.

**VACATED AND REMANDED.**