Opinions of the Colorado Supreme Court are available to the
public and can be accessed through the Judicial Branch's homepage at
http://www.courts.state.co.us.  Opinions are also posted on the
Colorado Bar Association's homepage at http://www.cobar.org.

ADVANCE SHEET HEADNOTE

**2020 CO 56**

**No. 19SA170, *People v. Meagher*—Water Law—Administrative Orders—
Injunctions—Motions to Dismiss—Summary Judgment.**

Plaintiff brought claims against defendant for injunctive relief, civil
penalties, and costs, arising from defendant's failure to submit a form required by
Rule 6.1 of Water Division No. 3's Measurement Rules.  The water court denied
defendant's motion to dismiss plaintiff's claims and subsequently granted plaintiff
summary judgment on those claims, and defendant now appeals.

The supreme court concludes, contrary to defendant's contentions, that
(1) the water court properly denied defendant's motion to dismiss because
plaintiff's claims were not mooted by defendant's belated compliance with
Rule 6.1; (2) the water court correctly determined that neither Rule 6.1 nor the
pertinent provisions of section 37-92-503, C.R.S. (2019), required plaintiff to prove
that defendant had a culpable mental state and therefore defendant's allegation
that he was not at fault for violating Rule 6.1 did not establish a genuine issue of
material fact so as to preclude the entry of summary judgment for plaintiff; (3) the

injunction entered by the water court was statutorily authorized and conformed to Colorado standards for enjoining further violations of the Measurement Rules; and (4) the water court properly awarded plaintiff costs and fees under subsection 37-92-503(6)(e).

Accordingly, the court affirms the judgment of the water court, concludes that plaintiff is entitled to an award of reasonable appellate attorney fees, and remands this case to allow the water court to determine the amount of appellate fees to be awarded.

# The Supreme Court of the State of Colorado

2 East 14th Avenue • Denver, Colorado 80203

## 2020 CO 56

### Supreme Court Case No. 19SA170

*Appeal from the District Court*
Alamosa County District Court, Water Division 3, Case No. 18CW3003
Honorable Pattie P. Swift, Water Judge

### Plaintiffs-Appellees:

The People of the State of Colorado, ex rel. Kevin G. Rein, State Engineer, and
Craig W. Cotten, Division Engineer for Water Division 3,

v.

### Defendant-Appellant:

Nick Meagher, an individual.

### Judgment Affirmed
*en banc*
June 15, 2020

**Attorneys for Plaintiffs-Appellees:**
Philip J. Weiser, Attorney General
Andrew Nicewicz, Assistant Attorney General
Philip E. Lopez, Senior Assistant Attorney General
    *Denver, Colorado*

**Attorneys for Defendant-Appellant:**
S.W. Atencio and Associates, P.C.
Stephane W. Atencio
    *Colorado Springs, Colorado*

**Attorneys for Amicus Curiae The Rio Grande Water Conservation District:**
Hill & Robbins, P.C.
David W. Robbins
Peter J. Ampe
Matthew A. Montgomery
*Denver, Colorado*

**JUSTICE GABRIEL** delivered the Opinion of the Court.

¶1 Kevin G. Rein, the State Engineer, and Craig W. Cotten, the Division Engineer for Water Division 3 (the "Engineers"), brought claims against Nick Meagher for injunctive relief, civil penalties, and costs, arising from Meagher's failure to submit Form 6.1—Water Use Data Submittal Form, as required by Rule 6.1 of the Rules Governing the Measurement of Ground Water Diversions Located in Water Division No. 3, The Rio Grande Basin (the "Measurement Rules"). Meagher now appeals the water court's orders denying his motion to dismiss the Engineers' claims and granting the Engineers summary judgment on those claims. He contends that the court erred in (1) denying his motion to dismiss because the Engineers' claims were mooted by his ultimate submission of Form 6.1; (2) granting summary judgment for the Engineers based on an erroneous interpretation of Rule 6.1 and section 37-92-503, C.R.S. (2019), and notwithstanding the existence of genuine issues of material fact as to his culpable mental state and the amount of the civil penalties to be imposed; (3) enjoining future violations of Rule 6.1; and (4) awarding costs and fees to the Engineers.

¶2 We reject each of these contentions in turn. First, we conclude that the water court did not err in denying Meagher's motion to dismiss because the Engineers' claims were not mooted by Meagher's belated submission of Form 6.1. Second, we conclude that the water court correctly determined that neither Rule 6.1 nor

3

the pertinent provisions of section 37-92-503 required the Engineers to prove that Meagher had a culpable mental state. Accordingly, Meagher's allegation that he was not at fault for violating Rule 6.1 did not establish a genuine issue of material fact so as to preclude the entry of summary judgment for the Engineers. Third, we conclude that the injunction entered by the water court was appropriate because (1) the court was not required to comply with the requirements of C.R.C.P. 65, given that section 37-92-503 provides special statutory procedures for issuing injunctions, and (2) the injunction conformed to Colorado standards for enjoining further violations of the Measurement Rules. Finally, we conclude that the water court properly awarded the Engineers costs and fees under subsection 37-92-503(6)(e), and therefore we need not address whether costs and fees could also have been awarded under subsection 37-92-503(1)(b).

¶3 Accordingly, we affirm the judgment of the water court, conclude that the Engineers are entitled to the reasonable attorney fees that they incurred on appeal, and remand this case to allow the water court to determine the amount of fees to be awarded.

## I. Facts and Procedural History

¶4 The State Engineer adopted the Measurement Rules in 2005, and the Division 3 Water Court approved them in 2006. Rule 6.1 of these Rules requires

certain well owners to report in writing, on an annual basis, the amounts of water pumped from their wells in a given irrigation year.

¶5 Meagher owns and pumps water from three tributary groundwater wells located in Conejos County, and he does not dispute that the wells are subject to the Measurement Rules. Before the events leading to this case, the Engineers had issued multiple orders to Meagher to compel compliance with the Measurement Rules and with conditions of his well permits and decrees, including orders to comply with Rule 6.1.

¶6 As pertinent here, in October 2017, the Engineers sent Meagher Form 6.1, so that he could submit his report of water pumped from his wells, as required by Rule 6.1. The form gave Meagher a deadline of December 1, 2017 to submit the required reports. When Meagher did not comply, the Division Engineer issued, pursuant to section 37-92-502, C.R.S. (2019), a "Notice of Violation and Order to Comply with Rules Governing Measurement of Ground Water Diversions" ("Order"). This Order required Meagher to complete and submit Form 6.1 within ten days. Again, Meagher did not comply. Accordingly, on March 16, 2018, the Engineers filed a complaint in the water court. In this complaint, the Engineers sought an injunction to prevent Meagher from further violating the Measurement Rules and the Order, civil penalties of up to five hundred dollars for each violation,

5

and costs, including reasonable attorney fees. Meagher ultimately completed and submitted Form 6.1 on April 4, 2018, which was ninety-nine days after the deadline set by the Order.

¶7 Thereafter, Meagher filed a motion to dismiss the Engineers' complaint. In this motion, he argued that his belated compliance with the Order rendered the Engineers' claims moot. The water court denied this motion, concluding that Meagher's eventual compliance with the Order did not render moot either the Engineers' claim for an injunction against further violations or their demand for civil penalties.

¶8 Meagher then filed an answer and cross-claim in which he alleged that he had reasonably relied on the Engineers' designation of certified well testers. Specifically, he asserted that although he had hired several certified well testers to submit the required reports, through no fault of his own, the well testers had failed to do so.

¶9 The Engineers subsequently filed a motion for summary judgment, contending that there were no genuine issues of material fact and that they were entitled to judgment as a matter of law permanently enjoining Meagher from further violating Rule 6.1 and ordering him to pay civil penalties, fees, and costs. The court granted this motion, concluding that there were no genuine issues of

material fact because, among other things, Meagher did not dispute that he had failed to comply on a timely basis with the applicable provisions of section 37-92-503, the Measurement Rules, and the Order. The court thus entered an injunction that provided, "Pursuant to C.R.S. § 37-92-503(6)(e) Mr. Meagher is permanently enjoined from further violations of Rule 6.1 of the Measurement Rules, and he is ordered to complete and submit Form 6.1—Water Use Data Form, for the Wells, each year, no later than December 1st." The court also ordered Meagher to pay a total of $1,500 in civil penalties ($500 for each of his wells), as well as the Engineers' costs of bringing this proceeding, including their reasonable attorney fees.

¶10 Meagher now appeals the water court's denial of his motion to dismiss and its grant of summary judgment in the Engineers' favor.

## II. Analysis

¶11 We begin by considering whether the water court erred in rejecting Meagher's assertion that his belated compliance with the Measurement Rules mooted the Engineers' claims. Perceiving no error, we proceed to consider whether either Rule 6.1 or section 37-92-503 required the Engineers to prove that Meagher had a culpable mental state and, if so, whether genuine issues of material fact precluded the entry of summary judgment here. We conclude that neither the

7

statute nor the rule requires any showing of a culpable mental state and that the water court properly entered summary judgment for the Engineers. Next, we address and reject Meagher's challenges to the injunction issued against him. Last, we consider whether the Engineers are entitled to an award of the costs and reasonable attorney fees that they incurred both in the water court and on appeal, and we conclude that they are.

## A. Meagher's Motion to Dismiss

¶12 Meagher first contends that the water court erred in denying his motion to dismiss the Engineers' claims against him because (1) his belated submission of the requisite form mooted the Engineers' claim for injunctive relief and (2) all of the Engineers' remaining claims were dependent on the viability of the claim for injunctive relief. Because we view Meagher's argument as part and parcel of his appeal of the grant of injunctive relief (even though he frames his argument as an appeal of the denial of his motion to dismiss), we will presume that this issue is properly before us. Nonetheless, we are unpersuaded by Meagher's contention.

¶13 We review de novo a district court's decision on a C.R.C.P. 12(b)(5) motion to dismiss. *N.M. v. Trujillo*, 2017 CO 79, ¶ 18, 397 P.3d 370, 373. We have adopted a "plausibility" standard for assessing such motions. *Id.* at ¶ 20, 397 P.3d at 373.

8

Under this standard, in order to survive a motion to dismiss, a plaintiff must allege a plausible claim for relief. *Id.*

¶14 We also review de novo the question of whether a case is moot. *See People in Interest of C.G.*, 2015 COA 106, ¶ 11, 410 P.3d 596, 599. "A case is moot when the relief sought, if granted, would have no practical legal effect." *State Bd. of Chiropractic Exam'rs v. Stjernholm*, 935 P.2d 959, 970 (Colo. 1997). If a case is moot, a court will decline to render an opinion on its merits. *Id.*

¶15 Here, pursuant to, among other provisions, subsection 37-92-503(6)(e), the Engineers sought injunctive relief. Subsection 37-92-503(6)(e) provides, in pertinent part:

> The state engineer and the particular division engineer in the name of the people of the state of Colorado, through the attorney general, shall apply to the water judge of the particular division to recover the civil penalties specified in paragraphs (a), (b), and (c) of this subsection (6) or for a temporary restraining order, preliminary injunction, or permanent injunction, as appropriate, *enjoining further violations* of this subsection (6). If the state engineer and the division engineer prevail, the court shall also award the costs of the proceeding including the allowance of reasonable attorney fees.

(Emphasis added.)

¶16 This subsection expressly allows for an order enjoining "further violations" of subsection 37-92-503(6). "Further" means "going or extending beyond what exists." *Further*, Webster's Third New International Dictionary (2002). Accordingly, subsection 37-92-503(6)(e)'s plain language indicates that an

9

injunction may be issued for violations that occur in the future, in addition to what has already taken place. Meagher's belated submission of the required form therefore did not moot the Engineers' claim for an order enjoining "further violations" of the statute and Rule 6.1, and the water court thus correctly rejected Meagher's assertion that the Engineers' claim for injunctive relief was somehow moot. And because Meagher's assertion that the Engineers' remaining claims were moot depended on a finding that the claim for injunctive relief was moot, the court likewise properly rejected Meagher's assertion as to those claims.

¶17 Accordingly, we conclude that the water court did not err in denying Meagher's motion to dismiss the Engineers' claims.

## B. Summary Judgment Order

¶18 Meagher next contends that (1) the water court erred in concluding that neither Rule 6.1 nor subsections 37-92-503(1)(a) and (6)(b) required the Engineers to prove that Meagher had a culpable mental state and (2) genuine issues of material fact as to his culpable mental state and the determination of the civil penalties imposed on him precluded the entry of summary judgment. We disagree.

¶19 We review an order granting summary judgment de novo. *Dep't of Revenue v. Agilent Techs., Inc.*, 2019 CO 41, ¶ 15, 441 P.3d 1012, 1016. Summary

judgment is only proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." C.R.C.P. 56(c); *accord Agilent Techs., Inc.*, ¶ 15, 441 P.3d at 1016.

¶20 In considering whether summary judgment is appropriate, a court grants the nonmoving party the benefit of all favorable inferences that may reasonably be drawn from the undisputed facts and resolves all doubts against the moving party. *Agilent Techs., Inc.*, ¶ 15, 441 P.3d at 1016. In responding to a properly supported summary judgment motion, however, the nonmoving party may not rest on mere allegations or demands in its pleadings but rather must provide specific facts demonstrating a genuine issue for trial. *Id.*

¶21 Summary judgment is a drastic remedy, and it should only be granted when it is clear that the applicable legal standards have been met. *Westin Operator, LLC v. Groh*, 2015 CO 25, ¶ 21, 347 P.3d 606, 611.

¶22 We also review questions of statutory interpretation de novo. *Agilent Techs., Inc.*, ¶ 16, 441 P.3d at 1016. In construing a statute, we aim to effectuate the legislature's intent. *Id.* "In doing so, we look to the entire statutory scheme in order to give consistent, harmonious, and sensible effect to all of its parts, and we

11

apply words and phrases in accordance with their plain and ordinary meanings." *UMB Bank, N.A. v. Landmark Towers Ass'n*, 2017 CO 107, ¶ 22, 408 P.3d 836, 840. Additionally, "[w]e must avoid constructions that would render any words or phrases superfluous or that would lead to illogical or absurd results." *Agilent Techs., Inc.*, ¶ 16, 441 P.3d at 1016. Furthermore, we respect the legislature's choice of language, and we do not add words to or subtract words from a statute. *Id.* If the statutory language is clear, we will apply it as written, and we need not resort to other tools of statutory construction. *Id.*

¶23 We likewise review court rules de novo. *Mercantile Adjustment Bureau, L.L.C. v. Flood*, 2012 CO 38, ¶ 30, 278 P.3d 348, 358. In construing such rules, we employ the same interpretive rules that we use in interpreting a statute. *Id.* Accordingly, we look first to the language of the rule itself, and if the rule is unambiguous, then we will apply it as written. *Id*.

¶24 Rule 6.1 of the Measurement Rules provides:

All owners of Wells within the scope of these rules shall report in writing the annual amounts of water pumped from Wells for the period of November 1, to October 31 and, for irrigation Wells, the method of irrigation (flood, center-pivot, etc.), to the Division 3 Engineer no later than December 1, 2008 and every irrigation year thereafter.

¶25 Subsection 37-92-503(1)(a), in turn, states:

In the event an order of a division engineer or the state engineer issued pursuant to section 37-92-502 is not complied with, the state engineer and the particular division engineer in the name of the people of the state of Colorado, through the attorney general, shall apply to the water judge of the particular division for an injunction enjoining the person to whom such order was directed from continuing to violate same.

¶26 And subsection 37-92-503(6)(b) provides:

Any person who, when required to do so by rules and regulations adopted by the state engineer, fails to submit data as to amounts of water pumped from a well, makes a false or fictitious report of the amounts of water pumped from a well, falsifies any data as to amounts pumped from a well, makes a false or fictitious report of a power coefficient for a well, or falsifies any power coefficient test shall forfeit and pay a sum not to exceed five hundred dollars for each violation.

¶27 Contrary to Meagher's assertion, nothing on the face of either Rule 6.1 or the above-quoted statutes includes a culpable mental state requirement as to the failure to file Form 6.1, and we are not at liberty to add such a requirement to the statutes or rule. *See Agilent Techs., Inc.*, ¶ 16, 441 P.3d at 1016. Moreover, Meagher cites no applicable authority suggesting that we must infer a culpable mental state in a civil case like this one, and we have seen no such authority. To the contrary, the case law that we have seen suggests that courts do *not* presume such an element. *See, e.g.*, *Black Diamond Fund, LLLP v. Joseph*, 211 P.3d 727, 736 (Colo. App. 2009) (concluding that a statute that allowed the Colorado Securities Commissioner to seek an injunction to enforce the Colorado Securities Act did not

13

require proof of scienter, notwithstanding the fact that a damages action for violations of the Act did require such proof, as did a criminal prosecution for violations of the Act); *Colo. State Bd. of Accountancy v. Paroske*, 39 P.3d 1283, 1287 (Colo. App. 2001) (rejecting an accountant's contention that a statute providing for discipline of certified public accountants contained a scienter element).

¶28 Accordingly, we conclude that neither Rule 6.1 nor subsections 37-92-503(1)(a) or (6)(b) required the Engineers to establish Meagher's culpable mental state to prevail on their claims for injunctive relief and civil penalties. As a result, we reject Meagher's contention that his purported reliance on certified well testers to file Form 6.1 established a genuine issue of material fact that precluded the entry of summary judgment for the Engineers. Suffice it to say that Rule 6.1 required Meagher to file his form by December 1, 2017, and he failed to do so.

¶29 In reaching this conclusion, we are unpersuaded by Meagher's numerous assertions as to why summary judgment was improper here. We address and reject each of these arguments in turn.

¶30 First, we disagree with Meagher's reliance on strict liability in tort cases to suggest that the water court erred in effectively creating a strict liability offense here. Most of the cases on which Meagher relies are based in the common law.

14

*See, e.g.*, *N.M.*, ¶¶ 1–2, 397 P.3d at 371 (concerning a common law negligence action brought against a dog owner); *Boles v. Sun Ergoline, Inc.*, 223 P.3d 724, 725–27 (Colo. 2010) (concerning a strict products liability claim against a tanning booth manufacturer). This case, however, involves a statute, and the penalty created is "entirely a creature of statute," so the common law does not govern. *Vaughn v. People ex rel. Simpson*, 135 P.3d 721, 723 (Colo. 2006). And in the one case that Meagher cites involving a statute, the division relied on the plain meaning of the statutory phrase "sets fire to," which suggested some level of intent, to conclude that the statute did not apply to someone who unintentionally ignited a fire. *Minto v. Sprague*, 124 P.3d 881, 886 (Colo. App. 2005). Neither the rule nor statutes at issue before us contain similar language suggesting that a culpable mental state is required in connection with a failure to file Form 6.1.

¶31 Second, we are unconvinced by Meagher's contention that the use of the word "willfully" in subsection 37-92-503(6)(c) establishes a culpable mental state that must be imputed to all other subsections of the statute. To the contrary, "[w]hen the General Assembly includes a provision in one section of a statute, but excludes the same provision from another section, we presume that the General Assembly did so purposefully." *Well Augmentation Subdistrict of Cent. Colo. Water Conservancy Dist. v. City of Aurora*, 221 P.3d 399, 419 (Colo. 2009). Here, the

15

legislature knew how to include a culpable mental state when it intended to do so, and it did not include such an element in subsections 37-92-503(1)(a) or (6)(b), which are the subsections at issue.

¶32 Third, we reject Meagher's assertions that declining to read a culpable mental state requirement into Rule 6.1 or subsections 37-92-503(1)(a) and (6)(b) (1) implicates due process concerns, (2) allows for circumstances in which compliance will be impossible, and (3) precludes Meagher from putting on a defense.

¶33 As to Meagher's due process concerns, he contends that the water court's conclusion that Rule 6.1 and the above-quoted statutes do not include a culpable mental state requirement raises such concerns because it makes the statute unconstitutionally vague. "The essential inquiry in addressing a void for vagueness challenge is whether the statute 'forbids or requires the doing of an act in terms so vague that persons of ordinary intelligence must necessarily guess as to its meaning and differ as to its application.'" *People v. Gross*, 830 P.2d 933, 937 (Colo. 1992) (quoting *People v. Becker*, 759 P.2d 26, 31 (Colo. 1988)).

¶34 Here, Meagher does not suggest that he could not understand that Rule 6.1 and section 37-92-503 required him to submit Form 6.1 by December 1, 2017. And Meagher does not explain why the absence of a culpable mental state element

somehow renders the statute unconstitutionally vague. Indeed, we long ago observed that the absence of such an element does *not* render an ordinance unconstitutionally vague. *See People ex rel. City of Arvada v. Nissen*, 650 P.2d 547, 551 (Colo. 1982) ("We do not see how the failure of the ordinance to require an intent to injure raises a problem of unconstitutional vagueness. It goes without saying that the decision to include or exclude a particular element in defining unlawful conduct is, in the first instance, a matter of legislative prerogative.").

¶35 As to Meagher's assertion that the absence of a culpable mental state element would render it impossible for him to comply with Rule 6.1 or section 37-92-503, he never explains why this is so. Although he suggests that well pumps may sometimes stop working, we fail to perceive—and Meagher does not say—why such an issue would make it impossible for him to file the requisite form.

¶36 And with respect to Meagher's assertion that our conclusion today would preclude him from putting on any defense and is contrary to our decision in *Vaughn*, we again disagree. By way of example, in an appropriate case, a defendant might have an argument that the form at issue was not required. Meagher has made no such argument here. Moreover, *Vaughn* actually supports our determination that subsections 37-92-503(1)(a) and (6)(b) do not include a culpable mental state element. In *Vaughn*, we concluded that statutory language

imposing liability on any person who diverted ground water contrary to a valid order of the State Engineer or a Division Engineer rendered such person responsible for the physical acts of others, at least when the unlawful diversion occurred with the person's authorization. *Vaughn*, 135 P.3d at 724. For the same reason, Meagher is responsible for his failure to comply with the Division Engineer's Order, notwithstanding his assertion that others were at fault for his noncompliance.

¶37 Finally, we are not persuaded by Meagher's argument that the provision in subsection 37-92-503(6)(b) allowing for the imposition of civil penalties "not to exceed five hundred dollars" for each offense reflects a legislative mandate that a judge must consider mitigating circumstances (including consideration of the well owner's culpability), thereby precluding the entry of summary judgment as to the amount of such penalties. Meagher cites no applicable authority supporting this position, and to the extent that his argument is premised on his assumption that the Engineers were required to establish his culpable mental state, we have already rejected that contention.

¶38 Moreover, trial courts typically enjoy considerable discretion in assessing civil penalties under a statute. *See, e.g.*, *Colo. Dep't of Pub. Health & Env't v. Bethell*, 60 P.3d 779, 787 (Colo. App. 2002). Here, Meagher cites no applicable authority,

and we have seen none, precluding a court from assessing and imposing civil penalties on summary judgment when, as here, the facts supporting the penalties were undisputed and the amount imposed was statutorily authorized. Indeed, *Bethell* suggests that the entry of such an order on summary judgment is proper. *See id.* (concluding that the trial court properly entered summary judgment assessing civil penalties when it was undisputed that the defendant had failed to provide financial assurance in response to a compliance order demanding such assurance and the penalty assessed was within the statutorily prescribed range of allowable penalties).

¶39 For all of these reasons, we conclude that the water court properly entered summary judgment in the Engineers' favor on their claims for injunctive relief and civil penalties.

## C. Injunction at Issue

¶40 Meagher next contends that the water court erred in issuing its order permanently enjoining him from "further violations of Rule 6.1" and requiring him to complete and submit Form 6.1 "each year, no later than December 1st." Meagher contends that, in issuing this injunction, the water court erroneously failed to make the findings required by C.R.C.P. 65 and that the injunction was

what Meagher characterizes as an improper "obey-the-law" injunction. We again are not persuaded.

¶41 With respect to Meagher's assertion that to enter the Engineers' requested injunction, the water court had to make the findings required by C.R.C.P. 65 and *Rathke v. MacFarlane*, 648 P.2d 648, 653–54 (Colo. 1982) (setting forth six findings that a district court must make before entering a preliminary injunction), we view our decision in *Kourlis v. District Court*, 930 P.2d 1329 (Colo. 1997), as dispositive. In that case, we observed that special statutory procedures may supersede or control the more general application of civil procedure rules. *Id.* at 1335. There, the statutory procedures at issue included a provision authorizing the Commissioner of Agriculture to issue a cease and desist order upon determining that the Pet Animal Care and Facilities Act had been violated. *Id.* at 1334. If the recipient of the order did not cease and desist as ordered and the violations continued for a period exceeding twenty-four hours, then the Commissioner could seek injunctive relief. *Id.* We characterized these procedures as "a comprehensive enactment which includes a restraining order and injunction provision as an essential feature of the enforcement design of a licensing statute." *Id.* at 1335. We observed that the legislature made clear that when the Commissioner had sufficient evidence to show that a person had violated the Act there at issue, "the

legislature presumed that a court would act to enjoin the illegal act or practice." *Id.* at 1336. Thus, we opined that the application of the civil procedure rules and the *Rathke* factors would have frustrated the licensure requirements set forth in the Act. *Id.*

¶42 In our view, subsections 37-92-503(1) and (6) evince similar special statutory procedures. Just like the statute at issue in *Kourlis*, these subsections establish a comprehensive enforcement process under which the Engineers may issue an order and then apply to the water court for an injunction and civil penalties if the recipient does not comply with that order. *See* § 37-92-503(1)(a), (6)(e). And as in *Kourlis*, these provisions disclose a legislative intent that a court will issue an injunction to enforce a valid order issued by the Engineers. Accordingly, for the reasons set forth in *Kourlis*, 930 P.2d at 1335–36, we perceive no error in the water court's determination that neither C.R.C.P. 65 nor the *Rathke* factors apply here. Indeed, to conclude otherwise would frustrate the comprehensive enforcement mechanism set forth in section 37-92-503. *See Kourlis*, 930 P.2d at 1336.

¶43 With respect to Meagher's assertion that the injunction entered in this case was an improper "obey-the-law" injunction, we note first that Colorado has not adopted such a standard. Our courts have, however, consistently stated that "[t]he general rule is that injunctive relief will not be granted to restrain the commission

of a crime." *Bd. of Cty. Comm'rs v. Vandemoer*, 205 P.3d 423, 430 (Colo. App. 2008); *see also State v. Tolbert*, 56 P.2d 45, 47 (Colo. 1936) ("The general rule undoubtedly is that injunction does not lie to restrain the commission of a crime . . . ."). And we have also stated that "an injunction prohibiting conduct must be sufficiently precise to enable the party subject to the equitable decree to conform its conduct to the requirements thereof." *Colo. Springs Bd. of Realtors, Inc. v. State*, 780 P.2d 494, 499 (Colo. 1989). Thus, we have concluded that a decree that simply prohibited a party from violating Colorado's antitrust laws did not sufficiently inform the party to whom the order was issued of the steps that it had to take to avoid violations thereof. *Id.*

¶44 Here, the injunction was civil in nature and did not restrain the commission of a crime. Moreover, notwithstanding Meagher's assertion to the contrary, the injunction was precise and prescribed with specificity the actions that he was required to take to comply with the injunction, namely, to cease violating Rule 6.1 and to complete and submit Form 6.1 each year on a timely basis. And the injunction was closely tailored to ensure Meagher's compliance with the exact rule that he violated in this case.

¶45 In these circumstances, we conclude that the entry of the injunction at issue and the scope of that injunction were proper.

22

## D. Costs and Attorney Fees

¶46     Finally, Meagher contends that the water court improperly imposed sanctions in the form of costs and fees pursuant to subsection 37-92-503(1)(b). Specifically, he asserts that the Order was issued by the Division Engineer, but subsection 37-92-503(1)(b) refers only to a court ruling upholding the order of the State Engineer. Thus, he argues that the award of costs and fees against him was improper. In addition, Meagher contends that an award of appellate attorney fees would be improper because subsection 37-92-503(6)(e) refers to an award of fees for "the proceeding," and, in Meagher's view, "the proceeding" refers solely to the litigation in the water court. We do not agree with any of these arguments.

¶47     Subsections 37-92-503(1)(b) and (6)(e) both address awards of fees and costs in cases like that at issue here. Subsection 37-92-503(1)(b) provides, in pertinent part, "[I]f the court upholds the order of the *state engineer*, the person against whom such order was issued shall pay the costs of the proceeding, including the allowance of reasonable attorney fees." (Emphasis added.) Subsection 37-92-503(6)(e), however, provides "If the *state engineer and the division engineer* prevail [on a claim for civil penalties or injunctive relief enjoining further violations of this subsection (6)], the court shall also award the costs of the

23

proceeding including the allowance of reasonable attorney fees." (Emphasis added.)

¶48 Here, contrary to Meagher's apparent misperception, the water court awarded attorney fees under *both* subsections 37-92-503(1)(b) and (6)(e). The Engineers have unquestionably prevailed in their effort to recover civil penalties and to obtain injunctive relief to preclude further violations of subsection 37-92-503(6). Accordingly, under the plain language of subsection 37-92-503(6)(e), the water court correctly determined that the Engineers were entitled to recover the costs of the proceeding, including reasonable attorney fees.

¶49 The question thus becomes whether the award of costs and fees "of the proceeding," as set forth in subsection 37-92-503(6)(e), includes the recovery of fees and costs that the Engineers incurred on appeal. We conclude that it does.

¶50 Colorado courts have consistently construed fee-shifting statutes like those at issue to include fees incurred in appellate proceedings. *See, e.g.*, *Hartman v. Freedman*, 591 P.2d 1318, 1322 (Colo. 1979) (concluding that a then-existing statute that provided that a judgment shall include a reasonable attorney fee in favor of the prevailing party also warranted an award of reasonable appellate fees because, among other things, the statute did not limit the fee award to fees resulting from the trial); *Akin v. Four Corners Encampment*, 179 P.3d 139, 147 (Colo. App. 2007)

24

(concluding that the award of appellate attorney fees was appropriate in a condemnation proceeding when the authorizing statute provided for the award of attorney fees to the property owner who participated in the proceedings); *Kennedy v. King Soopers Inc.*, 148 P.3d 385, 390 (Colo. App. 2006) ("When a party is awarded attorney fees for a prior stage of the proceedings, it may recover reasonable attorney fees and costs for successfully defending the appeal.").

¶51    These cases allow an award of appellate fees because "[t]he fundamental purpose of awarding attorney fees for the trial stage, where authorized by statute, is to make the [prevailing party] whole.  This purpose would be frustrated by a requirement that [the prevailing party] pay attorney fees to defend the [opposing party's] appeal." *Levy-Wegrzyn v. Ediger*, 899 P.2d 230, 233 (Colo. App. 1994).

¶52    Accordingly, and because we perceive nothing on the face of subsection 37-92-503(6)(e) that limits a fee award to fees incurred in the water court, we conclude that subsection 37-92-503(6)(e) entitles the Engineers to recover the reasonable costs, including attorney fees, that they incurred in this appeal.

¶53    Because we conclude that the water court properly awarded the Engineers costs and fees under subsection 37-92-503(6)(e), we need not address Meagher's argument that subsection 37-92-503(1)(b) limits an award of fees and costs to cases in which the water court upholds an order of the State Engineer.

¶54 Pursuant to C.A.R. 39.1, we exercise our discretion to remand this case to the water court for a determination of the amount of reasonable appellate fees to be awarded.

## III. Conclusion

¶55 Because Meagher's belated filing of Form 6.1 did not moot the Engineers' claims, we conclude that the water court correctly denied Meagher's motion to dismiss. In addition, because the summary judgment record established that Meagher violated section 37-92-503 and Rule 6.1 and that there were no genuine issues of material fact, we further conclude that the water court properly granted summary judgment in the Engineers' favor. And because the water court's rulings entering an injunction and awarding civil penalties, costs, and attorney fees to the Engineers comported with the law governing such remedies, we conclude that the water court properly ordered such injunctive relief, penalties, costs, and fees.

¶56 Accordingly, we affirm the judgment of the water court, conclude that the Engineers are entitled to an award of the reasonable attorney fees that they incurred in this appeal, and remand this case to allow the water court to determine the amount of fees to be awarded.

26