The summaries of the Colorado Court of Appeals published opinions
constitute no part of the opinion of the division but have been prepared by
the division for the convenience of the reader.  The summaries may not be
cited or relied upon as they are not the official language of the division.
Any discrepancy between the language in the summary and in the opinion
should be resolved in favor of the language in the opinion.

SUMMARY
July 28, 2022

## 2022COA86

**No. 20CA1992, *Portley-El v. DOC* — Colorado Department of
Corrections — Prisoner Identification — Commitment Name —
Religious Land Use and Institutionalized Persons Act;
Justiciability — Mootness — Voluntary Cessation Exception**

The plaintiff, an inmate, sued the Colorado Department of

Corrections (DOC), alleging, as relevant to this appeal, that a DOC

policy requiring inmates to use their "commitment name" violates

the Religious Land Use and Institutionalized Persons Act (RLUIPA),

42 U.S.C. § 2000cc.  While the litigation was pending, the DOC

voluntarily stopped enforcing the challenged policy at the facility

where plaintiff is incarcerated.  The district court then dismissed

the RLUIPA claim as moot.

After analyzing the voluntary cessation exception to mootness,

a division of the court of appeals concludes that plaintiff's RLUIPA

claim is not moot.  And because the DOC is not entitled to

judgment as a matter of law on the RLUIPA claim, the division reverses the judgment and remands for further proceedings.

COLORADO COURT OF APPEALS                **2022COA86**

---

Court of Appeals No. 20CA1992
Kit Carson County District Court No. 10CV42
Honorable Michael K. Singer, Judge

---

Patrick Duray Portley-El,

Plaintiff-Appellant,

v.

Colorado Department of Corrections,

Defendant-Appellee.

---

JUDGMENT REVERSED AND CASE
REMANDED WITH DIRECTIONS

Division VI
Opinion by JUDGE HARRIS
Dunn and Rothenberg*, JJ., concur

Announced July 28, 2022

---

Patrick Duray Portley-El, Pro Se

Philip J. Weiser, Attorney General, Nicole S. Gellar, First Assistant Attorney General, Denver, Colorado, for Defendant-Appellee

*Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and § 24-51-1105, C.R.S. 2021.

¶ 1     The Colorado Department of Corrections (DOC) has a policy requiring inmates to use their "commitment name" on all prison documents, including inmate mail and requests for services (the naming policy). The "commitment name" is the name that appears on the mittimus at the time of the inmate's initial commitment to the DOC. Patrick Duray Portley-El, an inmate, sued the DOC, alleging, among other things, that the naming policy violates his rights under the Religious Land Use and Institutionalized Persons Act (RLUIPA), 42 U.S.C. § 2000cc.

¶ 2     During the course of the litigation, the DOC voluntarily stopped enforcing the naming policy against Portley-El. It then moved for summary judgment on the ground that Portley-El's RLUIPA claim was moot. The trial court granted the motion and entered judgment in favor of the DOC.

¶ 3     We agree with Portley-El that the claim is not moot. We therefore reverse the judgment and remand the case for further proceedings.

## I.     Background

¶ 4     Portley-El was committed to the custody of the DOC in 1990. His commitment name is Patrick Portley.

¶ 5     Shortly after his incarceration, Portley-El converted to the Moorish Science Temple of America (MSTA) faith.  The MSTA, a sect of Islam, is an approved faith group at DOC.  *See* DOC Admin. Reg. 800-01.  In accordance with his religious beliefs, which everyone agrees are sincerely held,[1] Portley-El began to use a "religious" name, created by adding the suffix "El" to his former last name (i.e., the surname portion of his commitment name).  He did not legally change his name, though.

¶ 6     In 2010, after prison officials denied him services for failing to comply with the naming policy, Portley-El sued the DOC and various prison employees.  He asserted, among numerous other claims, that the naming policy violated his rights under the First Amendment and RLUIPA.

¶ 7     Years of litigation ensued.  By 2019, all of Portley-El's claims had been resolved except his claims against the DOC concerning the naming policy.  In the most recent prior appeal, a division of

---

[1] "It does not appear that the state challenges the sincerity of Portley-El's beliefs or that this question was at issue in connection with the naming dispute under RLUIPA." *Portley-El v. Dycus*, slip op. at ¶ 55 n.15 (Colo. App. No. 17CA1633, July 11, 2019) (not published pursuant to C.A.R. 35(e)).

this court affirmed the trial court's summary judgment in favor of the DOC on Portley-El's First Amendment claim. *See Portley-El v. Dycus*, slip op. at ¶ 46 (Colo. App. No. 17CA1633, July 11, 2019) (not published pursuant to C.A.R. 35(e)). But the division reversed with respect to the RLUIPA claim and remanded for a determination on the merits. *Id.* at ¶ 55.

¶ 8 On remand, the DOC moved for summary judgment on two grounds. First, it contended that the RLUIPA claim was moot because Portley-El is now incarcerated at Buena Vista Correctional Facility, "where he is permitted to add the suffix '-El' to his commitment name when submitting requests for certain services." Second, it contended that even if the claim was not moot, the DOC was entitled to summary judgment because Portley-El could not demonstrate that the naming policy imposed a substantial burden on the free exercise of his religion and, in any event, the policy was the least restrictive means of furthering a compelling governmental interest. *See Yellowbear v. Lampert*, 741 F.3d 48, 55-56 (10th Cir. 2014) (explaining the elements of a RLUIPA claim).

¶ 9 The trial court agreed with the DOC's first contention and dismissed the RLUIPA claim as moot, ending the litigation. The

court noted, however, that if the claim were not moot, factual disputes would have precluded summary judgment.

¶ 10    Portley-El appeals, arguing that under the "voluntary cessation" exception to mootness, the RLUIPA claim is not moot.

## II.    The RLUIPA Claim

¶ 11    This appeal requires us to answer two questions: First, is the RLUIPA claim moot?  Second, if the claim is not moot, can we nonetheless affirm on the ground that the DOC is entitled to judgment as a matter of law on the RLUIPA claim?  As we explain below, the answer to both questions is no.

### A.    The Claim Is Not Moot

¶ 12    Under the DOC's naming policy, all inmates must be identified by commitment name and assigned DOC number.  *See* DOC Admin. Reg. 850-07(IV)(A)(1)-(2) (formerly, DOC Admin. Reg. 950-06).  If an inmate legally changes his name, his new name is recorded in DOC records as an "AKA"; the inmate can use his AKA on prison documents and mail but only *in addition to* his commitment name.

¶ 13    As we understand Portley-El's position, he argues that the naming policy is unlawful because it requires him to use his commitment name while the Koran prohibits him from using *any*

4

name other than his religious name. In the alternative, he says that, even assuming a "dual" name policy is permissible, the naming policy still violates RLUIPA because it requires an inmate to legally change his name before he can use his religious name as an AKA.

¶ 14    At some point after Portley-El's transfer to Buena Vista, the DOC stopped enforcing its naming policy against him (and, possibly, other similarly situated inmates at that facility). It is not entirely clear, though, whether the DOC has permitted Portley-El to use his religious name *instead of* his commitment name (as the DOC's briefing suggests) or *in addition to* his commitment name (as the trial court's order suggests).

¶ 15    Regardless, the DOC contends that its decision not to enforce the naming policy renders Portley-El's RLUIPA claim moot. The trial court agreed, concluding that Portley-El "no longer faces adverse consequences" for using his religious name, "as long as he utilizes his commitment name" as well.

¶ 16    Portley-El argues that the trial court erred by concluding that his claim is moot.

¶ 17    We review de novo the question of whether a claim is moot. *People ex rel. Rein v. Meagher*, 2020 CO 56, ¶ 14.

¶ 18    A claim is moot when the relief sought, if granted, would have no practical legal effect on an actual existing controversy. *See Brown v. Colo. Dep't of Corr.*, 915 P.2d 1312, 1313 (Colo. 1996). Put another way, a claim becomes moot "when a plaintiff no longer suffers 'actual injury that can be redressed by a favorable judicial decision.'" *Ind v. Colo. Dep't of Corr.*, 801 F.3d 1209, 1213 (10th Cir. 2015) (citations omitted).

¶ 19    But there are a number of exceptions to the mootness doctrine including, as relevant here, the "voluntary cessation" exception. The rationale behind this exception is obvious: if a defendant's voluntary cessation of a challenged practice could deprive a court of its power to determine the legality of the practice, then in each case, the defendant would be "free to return to [its] old ways." *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 189 (2000) (quoting *City of Mesquite v. Aladdin's Castle, Inc.*, 455 U.S. 283, 289 n.10 (1982)); *see also Chihuahuan Grasslands All. v. Kempthorne*, 545 F.3d 884, 892 (10th Cir. 2008) (The voluntary cessation exception "exists to counteract the possibility of a

6

defendant ceasing illegal action long enough to render a lawsuit moot and then resuming the illegal conduct."); *Owens v. Carlson*, 2022 CO 33, ¶ 24 (inmate plaintiff's claim was not moot because if the court were to dismiss the appeal, the DOC "would be free to change its mind yet again" and reinstitute the challenged practice concerning calculation of parole eligibility date). Thus, "a defendant cannot automatically moot a case simply by ending its unlawful conduct once sued." *Prison Legal News v. Fed. Bureau of Prisons*, 944 F.3d 868, 880 (10th Cir. 2019) (quoting *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91 (2013)).

¶ 20 Voluntary cessation may moot a claim, however, if two conditions are satisfied: (1) there is no reasonable expectation that the alleged violation will recur, and (2) interim relief has completely and irrevocably eradicated the effects of the alleged violation. *Ind*, 801 F.3d at 1214. Portley-El focuses on the second condition: he says that the DOC has not demonstrated the requisite unlikelihood that the naming policy will be reinstated.

¶ 21 To satisfy this standard, the defendant "bears the formidable burden of showing that it is absolutely clear the allegedly wrongful behavior could not reasonably be expected to recur." *Friends of the*

*Earth*, 528 U.S. at 190. This burden is "stringent" and "heavy." *Id.* at 189 (quoting *United States v. Concentrated Phosphate Exp. Ass'n*, 393 U.S. 199, 203 (1968)).

¶ 22    While application of the voluntary cessation exception depends on the unique facts of a given case, *see Am. Civ. Liberties Union of Mass. v. U.S. Conf. of Catholic Bishops*, 705 F.3d 44, 56 (1st Cir. 2013), courts typically focus on four factors.

¶ 23    First, has the defendant actually changed or rescinded the challenged policy or merely stopped enforcing it? *Compare St. Louis Fire Fighters Ass'n Int'l Ass'n of Fire Fighters Local 73 v. City of St. Louis*, 96 F.3d 323, 328-29 (8th Cir. 1996) (the plaintiff's claim was moot where city defendant eliminated challenged testing procedure used for determining promotions), *with Parents Involved in Cmty. Schs. v. Seattle Sch. Dist. No. 1*, 551 U.S. 701, 719 (2007) (claim was not moot where school district merely discontinued challenged admissions process pending outcome of litigation); *Nakauchi v. Cowart*, 2022 COA 77, ¶¶ 30, 34 (claim was not moot where county documented its changed policy "in email communications and meeting minutes" but "never set out [the change] in any formal policy document").

¶ 24    Second, if the policy is still in effect, has the defendant stopped enforcing it system-wide or only with respect to the plaintiff?  *See Rich v. Sec'y, Fla. Dep't of Corr.*, 716 F.3d 525, 532 (11th Cir. 2013) (inmate plaintiff's claim was not moot where, after litigation commenced, prison officials began offering kosher meals only at the plaintiff's facility).

¶ 25    Third, has the defendant made a formal, explicit promise not to resume the challenged practice or policy?  *Compare Prison Legal News*, 944 F.3d at 884 (claim was moot where warden submitted declaration averring that prison would abide by its new policy concerning rejection of magazines and not revert to the former policy); *Brown v. Buhman*, 822 F.3d 1151, 1170-71 (10th Cir. 2016) (claim was moot where county prosecutor adopted a policy and filed a declaration asserting that the plaintiffs were under no credible threat of prosecution based on the policy), *with Porter v. Clarke*, 923 F.3d 348, 365 (4th Cir. 2019) (claim challenging conditions of confinement was not moot where prison officials testified they did not currently intend to revert to prior conditions, but they declined to commit the department to the "nonreversion promise").

¶ 26    And fourth, has the defendant continued to defend the legality of the challenged practice or policy?  *See Fields v. Speaker of Pa. House of Representatives*, 936 F.3d 142, 161 (3d Cir. 2019) (the plaintiffs' claim was not moot where state legislature continued to defend the constitutionality of the challenged practices "despite its counsel's statements at oral argument that it would not reinstate them").

¶ 27    The DOC relies on three employee declarations to establish that Portley-El's claim is moot.  Two of the declarations (by the Assistant Director of Offender Services and the Associate Director of Legal Services) merely defend the legality of the naming policy, explaining that it is the least restrictive means of furthering the DOC's compelling interest in maintaining security, inmate safety, and consistent record-keeping.  Neither declaration even acknowledges that the DOC has ceased enforcing the naming policy at any of its facilities and, therefore, neither declarant represents that the DOC will not resume enforcing the policy.

¶ 28    The third declaration, by an administrative services manager, explains that the "current practice" at the Buena Vista Correctional Facility, where Portley-El is incarcerated, is to allow inmates to

"include the suffix '-El' after the offender's commitment (last) name"
when requesting certain services. The declaration does not indicate
that enforcement of the policy has been suspended at any other
facility. Nor does the declaration purport to commit the DOC to any
particular action; indeed, no declarant says that the DOC intends to
continue to suspend enforcement of the policy, even with respect to
only the Buena Vista facility.

¶ 29    The trial court was persuaded that the declarations tied the
DOC's hands, and therefore the DOC could not resume enforcement
of the policy without facing "some rather adverse consequences."
We respectfully disagree with the trial court's interpretation of the
declarations. *See Colo. Dep't of Pers. v. Alexander*, 970 P.2d 459,
467 (Colo. 1998) ("An appellate court may draw its own conclusions
from operative documentary material in the record.").

¶ 30    In our view, the declarations do not make "absolutely clear,"
*Friends of the Earth*, 528 U.S. at 190, that the DOC will not resume
enforcement of the naming policy. Most importantly, the naming
policy is still in effect: the DOC has not amended the relevant

administrative regulation.[2] *See Tandy v. City of Wichita*, 380 F.3d 1277, 1291 (10th Cir. 2004) (voluntary cessation of a policy will not moot a claim unless officials undertake changes that are "permanent in nature" and "foreclose a reasonable chance of recurrence of the challenged conduct"). Thus, contrary to the DOC's assertion on appeal, the naming policy has not, in fact, changed since the litigation began. It has merely been relocated to a different section of the administrative regulations.

¶ 31 Next, the DOC decided to stop enforcing the policy only after years of litigation, and, even then, only with respect to the facility where Portley-El is incarcerated. *See Rich*, 716 F.3d at 532 (changing the policy "late in the game" and implementing it only at the facility where the plaintiff was incarcerated suggested that

---

[2] In contrast, after Portley-El challenged the DOC's policy of excluding MSTA members from Ramadan observance, the DOC officially amended its administrative regulations, mooting Portley-El's Ramadan-related claims. *See Portley-El v. Colo. Dep't of Corr.*, slip op. at 5-6 (Colo. App. No. 15CA2097, Aug. 25, 2016) (not published pursuant to C.A.R. 35(e)) (noting that by the time of the DOC's motion to dismiss, it had formally amended the applicable regulation and explaining that, absent evidence to the contrary, courts can "assume that formally announced changes to official governmental policy are not mere litigation posturing" (quoting *Sossamon v. Lone Star State of Texas*, 560 F.3d 316, 325 (5th Cir. 2009))).

prison officials changed course to moot the case (quoting *Harrell v. Fla. Bar*, 608 F.3d 1241, 1266-67 (11th Cir. 2010))); *see also Brown*, 822 F.3d at 1171 (holding that a claim regarding a non-prosecution policy was moot, but that the claim might not have been moot if the policy applied only to the plaintiffs rather than to all similarly situated individuals).

¶ 32    And no prison official has ever given any assurance, much less made an official declaration or promise, that the DOC will not resume enforcing the naming policy at some point in the future. The DOC has simply confirmed that its "current practice" is not to enforce the policy at one of its facilities. *See Sasnett v. Litscher*, 197 F.3d 290, 291 (7th Cir. 1999) (Defense counsel's representation that the state defendants had "no present intention" of reinstating the challenged prison regulation was "far from being an assurance, or even a prediction, that the state will not do so."), *abrogated on other grounds by Bridges v. Gilbert*, 557 F.3d 541, 551-52 (7th Cir. 2009); *see also Rio Grande Silvery Minnow v. Bureau of Reclamation*, 601 F.3d 1096, 1117-18 (10th Cir. 2010) (a claim may be rendered moot by a statutory change or a withdrawal or alteration of an administrative policy, but not by a "mere informal promise or

assurance . . . that the challenged practice will cease" (quoting *Burbank v. Twomey*, 520 F.2d 744, 748 (7th Cir. 1975))). Thus, because the DOC has not formally agreed to discontinue the naming policy, it will not face any adverse consequences if it later reinstates the policy. *Cf. Gordon v. Lynch*, 817 F.3d 804, 806-07 (D.C. Cir. 2016) (case was mooted where government formally conceded that prosecuting the plaintiff was not viable, as that representation "would likely estop the government from taking a contrary position in the future").

¶ 33 Finally, not only has the DOC declined to distance itself from the naming policy, but it has actively pursued the right to maintain the policy throughout the eleven years of litigation, including in this appeal. *See Fields*, 936 F.3d at 161; *see also Hall v. Bd. of Sch. Comm'rs*, 656 F.2d 999, 1000-01 (5th Cir. 1981) (permanent discontinuance of a school prayer reading did not moot First Amendment claim because the school board disputed the constitutional issue up until the day of trial and discontinued the practice only after suit was filed).

¶ 34 True, as the DOC points out, courts may "accord 'more solicitude' to government officials" than to private actors when

evaluating a claim that voluntary conduct has mooted a case. *Prison Legal News*, 944 F.3d at 881 (quoting *Rio Grande Silvery Minnow*, 601 F.3d at 1116 n.15). But such solicitude can only go so far. *See Nakauchi*, ¶ 29 (granting "some solicitude" to officials under the voluntary cessation doctrine does not equate to "absolute deference to a government entity's profession of good faith"). In the absence of even the barest assurances that the naming policy will not be enforced in the future, we cannot conclude that the DOC has carried its heavy burden to demonstrate that the RLUIPA claim is moot. *See id.* at ¶¶ 30-31 (declining to afford "solicitude" to county's voluntary cessation of challenged policy because, among other things, the county had not formally changed the policy); *see also Rich*, 716 F.3d at 531-32 (recognizing that although the government carried a lesser burden than other actors under the voluntary cessation exception, it nonetheless failed to meet its burden).

B.     The DOC Is Not Entitled to Judgment as a Matter of Law

¶ 35     The DOC argues that even if the RLUIPA claim is not moot, affirmance is still proper because it is entitled to judgment as a matter of law on the claim. We agree with the trial court, however,

15

that disputed issues of fact preclude summary judgment in favor of the DOC. *See Churchey v. Adolph Coors Co.*, 759 P.2d 1336, 1340 (Colo. 1988) (party moving for summary judgment has burden of establishing lack of a triable factual issue).

¶ 36    As the DOC correctly notes, under RLUIPA, the plaintiff has the initial burden to show that the exercise of his religion has been substantially burdened by a prison policy. *See* 42 U.S.C. § 2000cc-1(a); *Yellowbear*, 741 F.3d at 54-55 (discussing the plaintiff's initial burden under RLUIPA). If the plaintiff meets that burden, the prison officials must show that enforcing the challenged policy is the least restrictive means of furthering a compelling governmental interest. *See* 42 U.S.C. § 2000cc-1(a)(2); *Holt v. Hobbs*, 574 U.S. 352, 362-63 (2015).

¶ 37    Whether Portley-El's religious exercise has been substantially burdened by the naming policy cannot be resolved as a matter of law. For one thing, the determination of a substantial burden "in general is 'fact-specific and requires a case-by-case analysis.'" *Moussazadeh v. Tex. Dep't of Crim. Just.*, 703 F.3d 781, 791 (5th Cir. 2012) (citation omitted). And contrary to the DOC's characterization of Portley-El's position, he does not exclusively

16

contend that the naming policy constitutes a mere inconvenience or an offense; he also says that the Koran forbids him from using his former name. That claim is viable at this stage. *See Ali v. Wingert*, 569 F. App'x 562, 564 (10th Cir. 2014) (A requirement that an inmate use his commitment name could impose a substantial burden "if, say, a prisoner's sincerely held religious beliefs forbade *any* mention of a former name."). So too is his alternative claim that the policy substantially burdens his religious exercise because he cannot use his religious name (even in conjunction with his commitment name) unless he obtains a legal name change, which, he says, he cannot afford and his religion prohibits. *See Moussazadeh*, 703 F.3d at 793-94 (prison policy requiring inmate to pay for kosher meals substantially burdened inmate's religious exercise).[3]

---

[3] The DOC appears to argue that the naming policy does not burden an inmate's religious exercise because, currently (at least at Buena Vista Correctional Facility), an inmate may use his religious name without obtaining a legal name change. But this argument misses Portley-El's (and the trial court's) precise point: in order to accommodate Portley-El's exercise of his religion, the DOC had to stop enforcing its naming policy, which *does* require a legal name change before an inmate can use his religious name as an AKA.

¶ 38　　Nor are we persuaded by the DOC's backup argument — that even if Portley-El could show that the naming policy imposes a substantial burden, the DOC has demonstrated, as a matter of law, that the policy is the least restrictive means of furthering its compelling interest in maintaining security and accurate record-keeping.  The DOC may have presented evidence of a compelling interest, but it does not point to any evidence in the record to support a finding of "least restrictive means."  *See Jehovah v. Clarke*, 798 F.3d 169, 177 (4th Cir. 2015) (Officials failed to show that a prison's ban on communion wine was the least restrictive means of promoting safety and security because the affidavits did "not even attempt to explain why an absolute ban is the least restrictive measure available.").

¶ 39　　Therefore, based on the current record, we cannot affirm the trial court's decision on the alternative ground that the DOC is entitled to judgment as a matter of law on the RLUIPA claim.

### III.　Portley-El's Request for Costs

¶ 40　　Portley-El argues that he is entitled to an award of costs.  We discern no basis for such an award.

¶ 41    Under C.R.C.P. 54(d), a prevailing party in a civil case is generally entitled to costs.  However, the rule specifically precludes awarding costs against "the state of Colorado" and "its officers or agencies," except "to the extent permitted by law."  C.R.C.P. 54(d); *see also* C.A.R. 39(b).  Portley-El has not pointed us to any statutory authority that would support an award in this case.[4]

¶ 42    Thus, even if Portley-El were the prevailing party (which he is not, because the RLUIPA claim has not been resolved on the merits), he is not entitled to costs.[5]

## IV.    Conclusion

¶ 43    The judgment is reversed, and the case is remanded for further proceedings consistent with this opinion.

---

[4] In his briefing on remand in the trial court, Portley-El relied on section 13-16-104, C.R.S. 2021, as authority for an award of costs. That statute applies to a plaintiff who recovers damages.  RLUIPA does not authorize an award of damages against states or individual state actors.  *See Sossamon v. Texas*, 563 U.S. 277, 285-86 (2011).

[5] Portley-El seeks costs "[i]n the interests of justice," on the theory that his lawsuit has twice caused the DOC to alter its conduct — once by formally amending a policy to allow MSTA members to observe Ramadan and now by informally allowing certain inmates to use their religious names as an AKA.  This "catalyst theory" of prevailing party has been rejected by the Supreme Court.  *See Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Hum. Res.*, 532 U.S. 598, 605 (2001).

19

JUDGE DUNN and JUDGE ROTHENBERG concur.